By the Court—Robertson, J.
The question of the admissibility of the question put to Hallenbeek, the ship’s keeper, an expert, as to his judgment on the sufficiency of the fastenings, must be determined before examining the charge. Some degree of professional knowledge had been previously testified to by him; and also that he should judge the hawsers used were those usually employed— a large rope; and he certainly was competent to give an opinion as to their safety. It clearly was a subject of science and experience, and not of common knowledge;one of the fastenings seems to have broken; the plaintiff *566 had a right to prove that it was sound in the first place, and that such danger was properly provided against. . The question was, therefore, properly admitted.
The substance of the objections to the charge is, that the Judge confined the degree of care to be exercised by the defendant to that which a prudent man would exercise in regard to his own property, and did not charge that the neglect of the persons on board the vessels was imputable to the defendant.
In regard to the first point, we are bound to adhere to the views expressed by this Court at General Term, when the case was formerly before it, (1 Bosw., 357,) which limited the degree of care required to that which was stated in the charge on the present trial. (Story on Bailments, § 130.) Those views were not disapproved of by the appellate Court, (Moore v. Westervelt, 21 N. Y. R., 105,) which has since and lately thrown considerable doubt upon the existence of any practical distinction between ordinary and extraordinary care in regard to bailees for hire, as in the case of common carriers, in the ease of Wells v. N. Y. Central R. R. Co., (24 N. Y. R., 181, decided at their last term,) pronouncing it “illusory and impracticable.”
The request in regard to the neglect of the master and crew does not appear to me to have been put in a form which required a compliance with it. Omitting that part of it which relates to the defendant, which it is conceded was granted, it amounted to a request to charge, that the omission by such master and crew to take the necessary means for the safety of the vessel, made the defendant responsible; that it clearly did not, if he or any other person took the proper precautions, and if not only they but the whole world omitted them, he clearly was liable. ¡Neglect is negative conduct, and the defendant’s responsibility depended on the omission by everybody to take the proper measures to insure safety, not that of any particular individuals. The plaintiff was entitled to have the Jury instructed, either that the defendant was bound to adopt such means, or that the failure to employ them by *567 all the world made him liable; for if any one used them, he was entitled to the benefit of that use. If the object of the request was, as seems to be contended, that the defendant did not discharge his duty by leaving the vessel in the charge of the captain and crew, as held by the Court of Appeals in the case, it should have been made in terms less likely to be misunderstood. But even if negligence could be conceived to be a positive act, the charge that the defendant would be responsible, if the loss was caused by his negligence, seems to me to cover the case. The master and crew were, as held by the appellate Court, his agents under the circumstances, and he was responsible for their conduct; their negligence was his. If there was any doubt that the Jury would so understand their relation and its effect, the request should have been directed to that point in less ambiguous phraseology; because, as it stands, it is that if the neglect of such agents, as one of the alternatives, caused the loss, the defendant was responsible; and there is no pretense of any positive acts on their part to increase the danger. The defendant was responsible, if at all, for the neglect of the whole world, including himself, and not for that of any particular individuals. The third request equally falls short of the requisite exactness to reach the end proposed, if it were that now contended for; it was “that the Sheriff was “responsible for the negligence of the master and crew.” The learned Judge instructed the Jury, that if the defendant did not take the degree of care which the Judge had indicated, and the injury was caused by such negligence, the plaintiff was entitled to a verdict. How mere negligence of the agents was to make the liability of then* principal, arising from his own want of care, greater or less, I cannot discover. The learned Judge even went so far as to charge that the defendant “was bound to put on “board such men as would pump her out and heep her in a “condition to insure the safety of the cargo,” thus fully - defining his obligation.
*568 The verdict should, therefore, not be interfered- with by reason of any improper refusals to charge.
But it is said the verdict of the Jury, even if the charge was correct, was contrary to the evidence, or the weight of it, and that the defendant utterly failed to discharge 'any obligation incumbent upon him; and that is based principally upon the ground that nothing was done by any one, to save either vessel or cargo.
The liability of the defendant, turns generally upon the .question, whether he kept the cargo, which is the subject matter of the action, “in a secure place,” within the meaning of the 215th section of the Code, as well as discharged his duty as a bailee for hire and public officer charged with the possession of the goods seized by him as Sheriff. The highest Court of this State, in passing upon a former judgment in this action, held, that the defendant was not necessarily bound to remove the cargo out of the vessel, unless it was unsafe there, (Moore v. Westervelt, 21 N. Y. R.,. 105,) but he was bound to take a certain degree of care in protecting and securing it while in his custody on board of such vessel, what that degree of care was, was not adjudicated.
Being thus bound to see that the place of deposit was in itself safe, if it floated, he was bound to see that it was properly moored, secured and fastened, against all ordinary perils of winds and waves, and if necessary, protected against any storm or gale, after it arose, by every •means within Ms reach, which a prudent man would use for the purpose, either by removing the vessel to another place, or otherwise. Complaint is made, in this case, first, of the character, condition and fastenings of the vessel itself, and its exposure to storms coming from the quarter from whence that which sunk her did; and, secondly, of the neglect .to change her position after the storm commenced. Of course, if the storm was of a kind and from a quarter, which previous experience had taught might be expected, and the position of the vessel was such as not only to expose it to such storm, but also to prevent its *569 withdrawal after the storm had begun, the defendant would have been guilty of neglect in leaving it in that ■position. Or if the condition of the vessel, as to its lading or leaking, was such that it could not resist the force of the storm as well as if it had been lightened or pumped, or the leaks stopped, and the defendant neglected to use any proper measures to produce those results, and such neglect made her more easily a prey to the storm ;■ or if, after the commencement of the storm, he could have caused anything to be done to protect such vessel from its violence, by removing it, or increasing its fastenings, or otherwise, and did not do so, he was equally negligent. Upon these points it may therefore be necessary to examine the evidence; but the defendant would not be liable if the storm was one of a violence so unusual as not to have been reasonably expected; or if it was impossible to remove the vessel to a place where she would not be as much exposed to storms of equal violence from another quarter'; or if she was so situated as to be incapable of being withdrawn from the effects of a storm of ordinary violence from the same quarter, after it had commenced ; or if she was so kept clear by pumping as that her cargo or any leak did not increase her danger or render her unmanageable, and nothing could have been done within a reasonable time after the storm commenced, by removing the vessel out of its reach, or increasing her fastenings, to save her.
Both parties, in this case, seem to have been willing to trust the case to the Jury, upon the general charge of the Court, as to the degree of care to be exercised by the defendant; the state of affairs in which he would be bound to remove the cargo in question, or put men on board to pump the vessel out and keep her in a condition to insure its safety. There was no request for specific instructions as to the character of the storms against which provision was to be made, or the nature of such provision, or the duty of the defendant in regard to removing or protecting the vessel after the storm had begun; so that it was left *570 entirely to the Jury’s discretion to determine, according to their uninstructed views of the defendant’s duty, whether he had performed it or not. The plaintiff, after making that experiment, cannot now, in fairness, ask, upon a critical examination of the evidence, that such verdict should be set aside, merely because the Court may take a different view of the defendant’s conduct.
It certainly cannot be denied that the agents of the defendant did not seem to have had a very clear idea that he was responsible for anything except for the safe keeping of the coal, or if he chose to make the vessel in Avhich it was, his place of deposit, was bound to do anything to protect it against winds and waves or other accidents, nor that the defendant took any additional precautions against them. But this is wholly immaterial, if nothing could have been done to save the vessel. It is true, an omission to make an attempt to do, what to an unlearned mind may seem likely to accomplish an end, may have its weight with an equally unlearned Jury; but when experts pronounce such efforts futile, we are bound to yield to their judgment. The Jury in this case must have been satisfied that nothing could have been done to save the vessel, even by an owner stimulated by the fear of loss, and therefore the reason why nothing was done was immaterial. It would be unprofitable, therefore, to enter into speculations of possibilities, when we have realities before us.
So, too, the heavy lading and leak of the vessel, if, as it would appear by the testimony, they prevented it from being safely removed to a place of shelter, or increased the peril of that removal, might be a reason why the defendant should not have left it in a place of danger; but the testimony shows that human foresight could not determine from what quarter the danger would come, and the probabilities were that it would come from a quarter against a gale from Avhich the pier was a shelter. Against the leak, which was not formidable before the gale, protecv tion was given by the use of the pumps. It is true, the defendant might have exercised greater care in taking out *571 the excessive part of the cargo, before the storm, if he had had any reason to anticipate it, but the Jury had a right to determine that storms did not occur with such certainty, as, in view of the reasons sanctioned by the Court of Appeals for retaining the same depository, should call upon him to make the change; and the Jury has determined he did all a prudent man was likely to do in his own case.
The defendant having made out a prima facie case of destruction by overpowering and not to be expected force, it lay with the plaintiff to show that something could have been done when the attack came, to resist it, or rescue the vessel from it; the evidence in this case, certainly does not go to that extent. The Court is not at liberty to conjecture she might have been saved by going round the pier or across the slip. The Jury, with perhaps equal if not greater experience, have determined she could not, by deciding that a prudent man would not have tried it; and it would be improper for us to say, in the face of the evidence of the violence of the storm, they were wrong. The Court would not have been warranted in instructing the Jury that the defendant was bound to have made the attempt in the absence of all evidence that the expected action was feasible: what there is goes to prove it was not.
Without undertaking to say that the evidence establishes that the defendant did all that a prudent man would have done, to provide for contingencies in case anything could have been done, we merely mean to hold that there was no such overpowering evidence that anything should have been done beyond the measures taken to secure the vessel, in the first place, or after the wind commenced to increase, or that anything could have been done to save her when the storm had grown to a gale, as to warrant our setting aside the verdict for that reason.
The judgment must be affirmed, with costs.
Judgment accordingly.*

 On appeal to the Court of Appeals the judgment was affirmed, 25 How. Pr., 277.