JACOB L. VAN WYCKLEN, Appellant, *v.* THE CITY OF BROOKLYN, Respondent.

Where an order of General Term reversing a judgment entered on a verdict states that the facts were not before that court for revision and that its decision was upon the law only, the legal questions are reviewable here.

The opinion of a witness, upon the precise question the jury is to determine, is only competent when from the nature of the case the facts cannot be stated or described to the jury in such manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable.

To render the opinions of witnesses competent as evidence the subject must be one of science or skill, or one of which observation and experience have given opportunity and means of knowledge, which exist in reasons rather than descriptive facts, and, therefore, cannot be intelligently communicated to others, not familiar with the subject, so as to possess them with a full understanding of it.

Such testimony cannot be resorted to, therefore, where the facts can be placed before a jury, and they are of such a nature that jurors generally are as competent to form an opinion in reference to them as witnesses.

In an action to recover damages for injuries alleged to have been caused by negligence or wrongful acts of the defendant, expert testimony, to be competent, must be based on evidence in the case, and confined to the causes of the injury complained of.

In an action to recover damages for alleged diversion of the waters of Spring creek which furnished water power for plaintiff's mill, the claim of plaintiff was that the water was drained from the creek by certain driven wells put down by defendant on its lands near the creek, and from which it pumped water for the city supply. Defendant called as a witness one A., who was conceded to be an expert, and who constructed the wells in question. He described the manner of their construction, and stated that they drew water from a depth below the surface ranging from thirty-five to sixty feet. The depth of the wells varied, for the purpose of getting the benefit of the water in different water-bearing strata. He was then asked : "Was it possible for you to take in those pipes any water out of Spring creek?" This was objected to as "opinionative," and excluded. *Held* (FOLLETT, Ch. J., POTTER and HAIGHT, JJ., dissenting), no error.

*Comm.* v. *Choate* (105 Mass. 456) ; *Buffum* v. *Harris* (5 R. I. 243) ; *Detweiler* v. *Groff* (10 Penn. St. 377); *Phillips* v. *Terry* (3 Abb. Ct. App. Dec. 607), distinguished.

*Van Wycklen* v. *City of Brooklyn* (41 Hun, 418), reversed.

(Argued December 4, 1889; decided February 25, 1890.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made July 27, 1886, which reversed a judgment in favor of the plaintiff entered upon a verdict, and granted a new trial.

The nature of the action and the material facts are sufficiently stated in the opinion.

*William C. Dewitt* for appellant.   A mill-owner having title to the running water of a stream, by which his mill is operated, has a right of action against any person who has diverted such stream by any process which took the water after it had become a part of the open running water-course.   Water, while under the earth, is a part of the realty; but water running in an ancient course upon the earth's surface is usufructuary property belonging in common to the owners upon its banks; and it matters not whether a stream be diverted by a dam built upon the surface of the earth, or by pipes inserted underneath the surface, the liability is the same.   ( *Village of Delhi* v. *Youmans*, 45 N. Y. 362 ; *Garwood* v. *N. Y. C. & H. R. R. R. Co.*, 83 id. 404 ; *Smith* v. *Rochester*, 92 id. 463 ; *Burroughs* v. *Saterlee*, 25 The Rep. 204 ; *Gardner* v. *Newburgh*, 2 Johns. Ch. 162 ; 2 Kent's Comm. 439, 445 ; Angell on W. C. §§ 93, 95, 112 ; *Dexter* v. *P. A. Co.*, 1 Story, 387 ; Gould on Waters, §§ 263, 280, 281 ; Washburn on Easements, 247 ; *Rawson* v. *Taylor*, 33 Eng. L. & Eq. 428 ; *Broadbent* v. *Ramsbotham*, 34 id. 553 ; *Chasemore* v. *Richards*, 7 H. L. Cas. 349 ; *Pixley* v. *Clark*, 35 N. Y. 520 ; *Goodale* v. *Tuttle*, 29 id. 459 ; *Elles* v. *Duncan*, 21 Barb. 230 ; *Village of Delhi* v. *Youmans*, 45 N.Y. 363.)   It is not competent for an expert in a cause where the final conclusion to be reached by the jury is to be drawn from a variety of facts, especially when those facts involve the laws and operations of nature falling under the observation of all mankind, to answer a question fixing that final conclusion and definitely and directly deciding the main question to be passed upon by the jury. (*Ferguson* v. *Hubbell*, 97 N. Y. 507, 512, 519 ; 1 Greenl. on Ev. § 440 ; *Van Deusen* v. *Young*, 29 N. Y. 37 ; *Hart* v. *H. R. R. R. Co.* 84

id. 60; *Carpenter* v. *E. T. Co.*, 71 id. 579–580; *Ferguson* v. *Hubbell*, 97 id. 507, 512, 519; *Bennett* v. *Clemence*, 6 Allen, 10; *Hopkins* v. *I. & S. L. R. R. Co.*, 78 Ill. 32; *Morris* v. *East Huron*, 41 Conn. 252; *Barts* v. *Moore*, 126 Mass. 226; *May* v. *Bradlee*, 127 id. 414; *S. T. Co.* v. *Coover*, 26 Ohio St. 520; *States* v. *Rhodes*, 29 id. 171; 4 Greenl. on Ev. [14th ed.] 536; *Lincoln* v. *S. R. Co.*, 23 Wend. 425; *Brink* v. *H. F. Ins. Co.*, 80 N. Y. 116.) The witness had not been shown to be an expert, and upon this ground, the evidence was, of course, inadmissible. (*Hoyt* v. *L. I. R. R. Co.*, 57 N. Y. 678; *Nelson* v. *M. Ins. Co.*, 71 id. 460; *Terpenning* v. *C. E. Ins. Co.*, 43 id. 279; *Bedell* v. *L. I. R. R. Co.*, 44 id. 367; *Whele* v. *Haviland*, 42 How. 399; *Delafield* v. *Parish*, 25 N. Y. 38; *Slocovitch* v. *O. M. Ins. Co.*, 108 id. 56; *Nelson* v. *M. Ins. Co.*, 71 id. 460.) The objection was general in character, and the evidence being excluded, the ruling must be deemed to have been placed upon the right ground. (*Tooley* v. *Bacon*, 70 N. Y. 34, 37.) Upon all the facts of the case, it is manifest that the exclusion of the particular question did the defendant no harm, and hence it was error to reverse the judgment on that ground. (*Booth* v. *C. M. Co.*, 74 N. Y. 27; *Borden* v. *Stevenson*, 75 id. 164; *Moyer* v. *N. Y. C. & H. R. R. R. Co.*, 98 id. 645, 647; *Vandervort* v. *Gould*, 26 id. 614; *Carpenter* v. *E. T. Co.*, 71 id. 580.)

*Almet F. Jenks* for respondent. An action will not lie against a city if it, in the work of sinking a well on its own lands, intercept the percolation of the underground currents of water, and thereby prevent such water from swelling the springs or open running stream on or running through the soil or land of another. (*Chasemore* v. *Richards*, 7 H. L. Cas. 349; *Village of Delhi* v. *Youmans*, 45 N. Y. 362; *J. C. Co.* v. *Veghte*, 69 id. 22; *Bloodgood* v. *Ayres*, 108 id. 403; *Acton* v. *Blundell*, 12 M. & W. 324; Angell on Water Courses, chap. 4, § 114.) Testimony of experts as to whether the machinery of its system could draw off the living waters, or whether it was only intended to draw the waters of the earth and could

suck up such waters only was admissible. (*Detweiler* v. *Groff*, 10 Penn. St. 377: *Moyer* v. *N. Y. C. R. R. Co.*, 98 N. Y. 645; *Koster* v. *Noonan*, 8 Daly, 231; *Hand* v. *Brookline*, 126 Mass. 324.) Where specific objection is made to evidence offered, every ground of objection not specified, which is capable of being obviated by evidence, is waived. (*Marston* v. *Gould*, 69 N. Y. 220; *Walsh* v. *Washington Co.*, 32 N. Y. 440–443; *Newton* v. *Harris*, 6 id. 345; *Durgin* v. *Ireland*, 14 id. 322; *Blossom* v. *Barrett*, 39 id. 434; *Moser* v. *Vose*, 67 id. 56; *Platner* v. *Platner*, 78 id. 95.)

BROWN, J. The plaintiff brought this action to recover damages which he claimed to have sustained from the diverson by the defendant of the waters of a stream called Spring creek, and there was a verdict in his favor at the Circuit.

The judgment on such verdict was reversed by the General Term, and the order of reversal states that the facts were not before that court for review and its decision was upon the law only. The legal questions arising in this case are, therefore, properly before this court. *Pharis* v. *Gere* (112 N. Y. 408).

The plaintiff was the owner of a grist mill situated near the junction of "Spring creek" with Jamaica bay, and he derived the power to drive the machinery of his mill from the flow of the tide of the bay, and the flow of the waters of the creek.

The defendant, pursuant to a statute of the State, had acquired title to a strip of land upon the banks of the creek, about two miles above the plaintiff's mill, and upon such strip of ground had constructed one hundred driven wells, from which it pumped water for the supply of the city. The nearest well to the creek was distant therefrom about two hundred feet, and the others were located at varying distances up to about six or seven hundred feet therefrom.

It was the claim of the plaintiff that these wells drained the water from the creek and arrested the same in running to the mill, thus diverting the living stream and impairing and injuring his water power; and there appears to have been a concession at the trial, and the same is made in this court,

that if, in sinking the wells on its own land, the city did no more than intercept the percolation of underground currents, and thereby prevented such water from running through the soil and reaching the stream, the action would not lie. And such is the law applicable to the case. (*Chasemore* v. *Richards*, 7 H. L. Cas. 349; *Village of Delhi* v. *Youmans*, 45 N. Y. 362, and cases cited.)

The question in issue, therefore, was, did the defendant by their wells and machinery draw the water out of the creek after it became an open running stream on the surface of the earth.

At the close of the plaintiff's case there was a motion by the defendant to dismiss the complaint "upon the ground that the evidence disclosed no liability on the part of the city," which motion was denied, the court holding that the evidence presented a question of fact for the consideration of the jury.

We do not understand the learned counsel for the city to claim that there was any error in the denial of this motion, and it was not made a ground of reversal at General Term.

It is sufficient for us to say, therefore, that we think the evidence was of a character to permit the conclusion drawn by the jury, and it would have been error for the court to have withdrawn the case from their consideration. The jury having determined the facts in favor of the plaintiff's contention, the judgement must stand unless there was error committed in the conduct of the trial.

The defendant called as a witness one William D. Andrews, who testified that his business was making and drilling wells and supplying water for cities and villages, and that he had constructed the wells in question. He described the manner of their construction, and stated that they drew water from a depth below the surface ranging from thirty-five to sixty feet, and that the depth of the wells varied for the purpose of "getting the benefit of the water in different water-bearing strata."

He was then asked the following question: "Was it possible for you to take in those pipes any water out of Spring creek?" This was objected to as "opinionative" and excluded, to which ruling of the court the defendant excepted.

The judgment was reversed by the General Term on the ground that this question should have been admitted, and the propriety of the ruling of the trial court in its exclusion is the main question presented on this appeal.

While we recognize fully the difficulty at times of deciding whether the case presented is one in which expert or opinion evidence is admissible, the majority of this court is of the opinion that the ruling of the trial judge was correct.

Within the general rule that witnesses who are skilled in science and art, and those who from experience and special study have peculiar knowledge upon the subject of inquiry which jurors have not, may testify not only to facts, but may also give their opinions as experts, the decisions of the courts have given a wide range to expert evidence.

No rule, however, can be made so precise as to include all cases, and each question as it arises must be determined by the application of general principles to the particular inquiry involved in the case before the court.

While it is no longer a valid objection to the expression of an opinion by a witness, that it is upon the precise question which the jury are to determine (*Transportation Line* v. *Hope*, 95 U. S. 297; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42; *Cornish* v. *F. B. F. Ins. Co.*, 74 id. 296), evidence of that character is only allowed when, from the nature of the case, the facts cannot be stated or described to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable. (*Ferguson* v. *Hubbell*, 97 N. Y. 507; *Schwander* v. *Birge*, 46 Hun, 66; Greenl. on Ev. vol. 1, § 440, and note.)

Familiar examples of the admission of evidence of this character, are cases involving questions of medical practice and skill, and cases involving genuineness of handwriting. Within the same principle the question whether a vessel was unseaworthy was held admissible, because it involved the result of an examination which could not be fully communicated to a jury. (*Baird* v. *Daly*, 68 N. Y. 547.)

It was also held competent to ask a pilot "whether it would be safe for a tug boat on Chesapeake bay or any other wide water to tug three boats abreast with a high wind" (*Transportation Line* v. *Hope*, 95 U. S. 297); to ask of an engineer familiar with the locality and structure whether an embankment and bridges were skillfully constructed with reference to the creek (*Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42); and evidence of like character has been admitted on the question of negligence in mooring a vessel (*Moore* v. *Westervelt*, 9 Bosw. 558); on the necessity of jettison (*Price* v. *Hartshorn*, 44 N. Y. 94), and on questions involving nautical skill (*Walsh* v. *Marine Ins. Co.*, 32 N. Y. 427.) Opinions were held admissible in the cases cited, for the reason that the controlling issue in the case involved questions of skill and experience which the witness's practical knowledge enabled him to speak upon, and because the facts which impressed the mind of the witness could not be placed before the jury, and no better evidence was available.

The rule is well stated by Justice BRADLEY, in *Schwander* v. *Birge* (*supra*), as follows: "The governing rule deduced from the cases permitting the opinion of witnesses is, that the subject must be one of science or skill, or one of which observation and experience have given the opportunity and means of knowledge which *exists in reasons rather than descriptive facts*, and, therefore, cannot be intelligently communicated to others, not familiar with the subject, so as to possess them with a full understanding of it."

To the same effect it was said by Judge EARL, in *Ferguson* v. *Hubbell* (*supra*): "Opinions are allowed when the facts cannot be adequately placed before the jury so as to impress their minds, as they impress the mind of a competent skilled observer. * * * When the facts can be placed before a jury, and they are of such a nature that juries generally are just as competent to form opinions in reference to them, and draw inferences from them as witnesses, there is no occasion to resort to expert or opinion evidence."

The question which the jury in this case was to decide was

not one of science, and the inquiry vital to the admissibility of the evidence offered was, could the facts bearing on the question of the disappearance of the waters of the creek be placed before the jury, and were they of such a nature that the jurors could comprehend them and intelligently draw inferences from them.

There was nothing in the case as developed by the plaintiff that made opinion evidence admissible.

To sustain his theory that the subsidence of the waters in the creek was caused by the pumping from the wells, he had given evidence that the stream was made up largely of surface drainage, and not from underground currents; that it had never prior to 1883 dried up; that immediately following the commencement of the pumping from the wells the creek dried up at a point nearest the wells, while the water further up the stream and in its tributaries continued to flow.

He further showed generally the character of the surrounding soil, and that as the pumping continued and exhausted the water near the wells, the water disappeared further up the stream until its flow was substantially destroyed. The evidence of Andrews, given prior to being asked the question under consideration, added no new facts to the case. The question put to him in substance called for his opinion upon the facts proven. In other words he was asked to draw inferences and form conclusions which belonged exclusively to the province of the jury.

Whether or not the disappearance of the creek was caused by the pumping at the wells or whether the waters of the creek could filter through the ground and reach the bottom of the wells, depended upon the operation of natural laws, and if the witness had an opinion upon that subject it must have had its foundation in facts, such as the sources of the stream, the character of the soil between the bed of the creek and the bottom of the wells, the velocity of the stream and its grade, the course of the current, etc. These and any other facts bearing upon the question in issue, if deemed competent to overcome the effects of plaintiff's testimony, and account for the disap-

pearance of the stream, might have been shown, and it is not at all unlikely that had facts of the character referred to been proven tending to indicate other adequate causes for the disappearance of the creek, that questions would have been developed upon which the opinion of an expert witness might have been admissible. But without such proof it is not apparent from the record that the case presented any question calling for the opinion of an expert, and unless such a case was presented on the evidence the question was properly excluded. (*Gutterman* v. *L. N. Y. & P. Steamship Co.*, 83 N. Y. 358; *People* v. *Barber* 115 N. Y. 475–491.)

The form of the question in this connection must be observed. It was not an inquiry into the causes of the disappearance of the stream, and called for no fact bearing upon the question which the jury could have considered. No opinion even upon the cause of the disappearance of the water was asked, but simply whether it was *possible* for the pumps to draw the water from the creek. This admitted of a simple negative answer, which could have thrown no light on the case, and afforded no assistance to the jury in their deliberations, and might have had no foundation except deductions and inferences from the evidence already in the case.

The purpose of expert evidence is to aid the jury in their deliberation on the case and in their review of the evidence, and to be competent for that purpose it must, where the questions involved are not ones of science or art, be based upon evidence in the case and confined in cases of this character to the causes of the injury complained of.

In *Moyer* v. *New York Central & Hudson River Railroad Company* (98 N. Y. 645), the question held to be competent was "are there any adequate causes in your opinion for this," referring to the injury complained of. The court said, "the witness, an expert, might very well be asked, in the presence of a given effect, of what causes it either was or might be the resultant. * * * It assumed an hypothesis, the truth or falsity of which was left open to the jury, and then asked not what caused the injury, but what were all the adequate

causes which might have been its origin, leaving to the jury to determine among them."

Here the inquiry was of a very different character. It left nothing to the jury and it indicated no cause for the injury.

Assuming a negative answer to the question, to obtain which was its object, the defendant proposed to say to the jury : It is impossible for our pipes to draw the water out of the creek, notwithstanding all that plaintiff has proven. But as this was a mere naked opinion upon the precise question which the jury were to decide, it clearly was inadmissible.

None of the cases cited by the learned General Term are in point. *Commonwealth* v. *Choate* (105 Mass. 456), was an indictment for arson, and the case goes no further than to hold admissible the opinion of competent witnesses that two pieces of wood, which it was claimed connected the prisoner with the crime, were parts of the same stick. Obviously this evidence falls within the rule stated in *Schwander* v. *Birge*, where the means of knowledge of the witness existed in reasons rather than descriptive facts, and the case is analogous to those cited in this opinion relating to questions of skill and special and peculiar knowledge.

*Buffum* v. *Harris* (5 R. I. 243), was a case somewhat like the one under consideration, but there the experts stated facts upon which they based their conclusion, and the court held the opinions admissible in connection with those facts. The same may be said of the case of *Detweiler* v. *Groff* (10 Penn. St. 377), and *Phillips* v. *Terry* (3 Abb. Ct. App. Dec. 607), cited by the respondent. *Moyer* v. *New York Central & Hudson River Railroad*, has already been referred to. Between that case and the one under consideration, there is no similarity.

If the question had called for a statement by the witness of any adequate cause within his knowledge for the disappearance of the creek, it would have been within the principle of the *Moyer Case* and been admissible. The jury would then have had before it an hypothesis or theory, the truth or falsity of which they could have considered in connection with the open

visible facts of the case, and which would have been left open for their determination.

We are of the opinion that this case was not one in which it was impossible to place the facts bearing upon the matter in controversy before the jury, and that to have admitted the opinion of the witness called for by the question asked, would have extended the rule as to expert testimony beyond that of any reported case within this state.

Whatever may be the rule elsewhere, the decisions of this state are adverse to the rule contended for by the respondent.

Our conclusion is that the ruling of the trial court was right.

There was no error in the ruling upon the other question asked of the same witness and excluded upon the plaintiff's objection.

It was of no importance what the system of pumping operated by the defendant was designed to reach, or what it depended upon. The question was, did it reach the waters of the creek and divert them from the living stream, and upon that question the evidence excluded had no bearing whatever.

The order of the General Term should be reversed and the judgment entered upon the verdict affirmed, with costs.

POTTER, J. (dissenting). I deem it proper in this case to present the grounds of my dissent from the opinion of the majority of the court. Passing the verdict found by the jury and assuming that it must be approved by this court, though it practically rests upon the theory that water of a running stream proceeding from a water-shed of uplands and brooks, and flowing along a well-defined and ancient channel, has been drawn to the points of driven wells or tubes of iron with small openings in the lower end of the same and inserted in the earth to the depth of thirty feet below and one hundred and fifty feet one side of the channel, or in other words, that water without obstruction to pursue its wonted channel to a lower level, may be diverted or drawn through solid earth twenty-five feet deep and one hundred and fifty feet wide to the vacuums in the small tubes produced by the machinery

with which the tubes are connected.    It may be, and I am not intending to maintain here, that this court can review or question the omniscient (humanly speaking) verdict of a jury in respect to the existence and operation of the laws of nature. I assume that common or judicial notice of the laws of nature must stand silent in the sacred presence of a verdict of a jury. But while such may be the situation in respect to the power of this court over the finding of a jury, I maintain that it is the duty of this court to see that the minds of the jury are properly informed by any legitimate means before rendering a verdict which shall irrevocably fix the rights of the parties, and especially in a case involving the laws of nature and their operation in respect to waters percolating the earth and the application of machinery to overcome or to modify their operations, and this brings me to the consideration of the question which separates me from a majority of my brethern.

There is but one question to be considered upon this appeal. That question is whether a witness conceded to be an expert by the ground of the objection, and who examined the stream in question and its origin and the lands from and through which it flows and who devised and erected the machinery connected with the driven wells, and has had fifteen years experience in sinking and operating this species of wells, may be allowed to express his opinion to an ordinary jury impaneled to try the question whether the main body of such stream has been withdrawn by means of these wells; or in the language of the question which the learned trial court overruled viz: " Was it possible for you to take in those pipes any water out of Spring creek ? "

No one will deny that the general rule is that testimony can relate merely to facts, and that inferences from them are to be made by the jury.    (Lawson's Expert and Opinion Evidence, 200.)

But this general rule has been broken in upon by the admission of various classes of exceptions, resting upon the common ground of necessity.    (Id.)    " Such necessity is allowed to exist where the facts in issue are not themselves accessible by evi-

dence, being either future probabilities or mere contingencies or else actual facts, but not within positive knowledge. All of these must, of necessity, be judged of only from other proved facts known generally to accompany or to indicate those in question, as for instance, where the facts to be ascertained are inferred from some rule or art or science or observed law of nature thus proved; the knowledge by which the existence of the unknown fact is inferred from the one proved, may not fall within the range of ordinary information, but may be proved by professional or experienced witnesses having peculiar skill in some art, trade, or science relating to the subject. Thus the fact of certain appearances in a dead body having been proved, the subsequent question whether such appearances indicate poison, is wholly out of the power of the best informed men to determine, unless they had made such subject a previous study. Again, the market-value of an article at a given time, upon the allowance of damages on which a jury has to pass, is frequently a question such as dealers in that article can alone decide. There it is a matter of necessity to call in the experienced or instructed opinion of such witnesses. No proof of the naked state of facts as to a ship after a storm could perhaps enable a landsman, however intelligent, to judge of those necessities which are so often to be inquired into in marine contracts. Thus, also, in an action for negligently steering a ship as in *Malton* v. *Nesbit,* mere proof of the naked facts could not enable a jury of landsmen to draw any inference; and experienced nautical men are called in to prove whether facts of that kind amount to unjustifiable negligence. Opinion is admitted when a jury is incompetent to infer without the aid of greater skill than their own, as to the probable existence of the facts to be ascertained, or the likelihood of their occurring from the facts actually proved before them. Indeed, it would be more logically accurate to say that mere opinions even of men, professional or expert, is not admissible as such; but that facts having been proved, men skilled in such matters may be admitted to prove the existence of mere general facts or laws of nature, or the course of business as the

case may be, so as to enable the jury to form an inference for themselves. Thus the existence of certain appearances in the dead body having been proved, the chemist testifies that such appearances invaribly or generally indicate the operation of some powerful chemical agent. His scientific opinion is, in fact, his testimony to a law of nature. All these are testimonies to general facts which the jury can ascertain in no other way, and which, when proved, afford them the means of drawing their own conclusions from the whole mass of testimony taken together. The same reason of absolute necessity has compelled the admission of evidence of opinion in certain cases where the poverty of human language makes it absolutely impossible to separate in words the minute and transient facts observed by the witnesses from the inference as to some other fact, irrestisibly connected with the former in his own mind. Testimony as to handwriting, I think, resolves itself into this, as no words can freely convey to others the minute particularities on which such judgment is founded. So, too, in questions of identity as to men, to goods, horses, etc., though the facts on which judgment is founded may be partially stated, still the judgment of opinion is admitted. In these cases the witness swears as to the present conviction in his own mind as to an actual fact, though deduced from circumstances which cannot be made palpable to others. It is often difficult to draw a line of distinction between testimony to simple facts and the statement of such immediate and conclusive inferences as the witness forms in his own mind." And hence general physical facts or truths not known to the common mind and not apprehensible by the senses at single or casual observation, may be shown by one who has knowledge or skill or experience, an expert, to aid the jury in the ascertainment of the truth.

Lawson, in his work upon expert and opinion evidence, cites numerous cases which illustrate the line of distinction applicable to various subjects and situations where opinion evidence may, and where it may not be received. (1 Car. & P. 76; *Folkes* v. *Chadd,* 3 Dougl. 157; 1 Phillips on Ev. 778; *Goodtitle* v. *Braham,* 4 T. R. 498; *Price* v. *Powell,* 3 N.Y.

322; *Detweiler* v. *Groff*, 10 Penn. St. 377 ; *Buffum* v. *Harris*, 5 R. I. 243 ; *Hand* v. *Inhabitants of Brookline*, 126 Mass. 324.)

The cases in which it may be properly received are embraced in the language of the opinions of the different judges similar to that employed in the text of Lawson, *supra*.

Judge DANFORTH, in *Scattergood* v. *Wood* (79 N. Y. 266), states the rule as follows; " The inquiry related to a matter which was not the subject of general knowledge, but depended on facts which, from their nature, it would be difficult, if not impossible, to place before the referee, and the statement embodied in the opinion given in evidence was itself a fact derived from peculiar knowledge and skill in the use of the various machines referred to. It was the result of professional knowledge and practical experience (*Emerson* v. *Lowell Gas Light Co.*, 6 Allen, 146), and the question raised by the warranty could hardly be answered except by the direct opinion of those who, possessing this superior knowledge and experience, had seen the machines in operation or knew the merits of machines constructed under the plaintiff's patent, and others then in use. Upon this ground, therefore, as well as the one first stated, I think the evidence objected to was properly received." In *Smith* v. *Gugerty* (4 Barb. 625) the court says : " The witness was asked his opinion as an expert. The question is competent and proper when it relates to a deduction from facts concerning which the witness has a knowledge peculiar to his science, art or profession, and which is not common to the world. In such cases the jury are unable to draw a correct conclusion from the facts, and must necessarily rely upon the opinions of those who are better enabled to do so by their professional experience. * * * The requisite knowledge is confined principally, if not wholly, to the class of mechanics to which the witness belonged. That brings it within the rule." Judge ALLEN, in *Baird* v. *Daly* (68 N. Y. 551), says : " It was competent for the defendant, and he should have been permitted to show by the witness Hays that the scow was unseaworthy ; that is, unfitted and unsafe for

the service in which she was engaged, and unsafe to be taken in tow. The jury were non-experts, and with every fact which would enable a skilled man to determine the question of seaworthiness, it by no means follows that they would make the proper inference and arrive at a correct conclusion."

Judge EARL said, in *Ferguson* v. *Hubbell* (97 N. Y. 513): "Witnesses who are skilled in any science, art, trade or occupation may not only testify to facts, but are sometimes permitted to give their opinions as experts. This is permitted because such witnesses are supposed, from their experience and study, to have peculiar knowledge upon the subject of inquiry which jurors generally have not, and are thus supposed to be more capable of drawing conclusions from facts, and to base opinions upon them, than jurors generally are presumed to be. Opinions are also allowed in some cases where, from the nature of the matter under investigation, the facts cannot be adequately placed before the jury so as to impress their minds as they impress the minds of a competent, skilled observer, and where the facts cannot be stated or described in such language as will enable persons not eye-witnesses to form an accurate judgment in regard to them, and no better evidence than such opinion is attainable." And Judge BRADLEY used language of similar import in *Schwander* v. *Birge*, quoted in the opinion of my brother BROWN in this case. But while the language used in the last two cases cited lays down the rule of the admissibility of opinion evidence in certain cases, they hold that the cases then under consideration did not admit of such evidence, and the reasons for so holding in those cases are, in my judgment, entirely decisive of the admissibility of the evidence excluded in this case.

In the case under consideration the device itself, the laws of nature involved in its operation and the manner of utilizing those laws in the supply of water at a particular point, is novel and unknown, if not a mystery to the common mind of the ordinary juror. Whether the water flows to the openings in the tubes solely through the law of gravity and the mobility of the water, or is drawn to those points by atmospheric pressure;

whether there is a power applied to produce a vacuum and to obtain the pressure of the atmosphere, how such power, if employed, is applied, and the measure and limits of such power, and the regulation of the machinery or means of exerting and applying such power; or if some other power than this is employed to transfer the water from the stream into the tubes, what such other power is, and how it is applied to the works, and whatever the power may be that is employed for the purpose, what its strength and efficiency are, and whether sufficient to draw water the distance and through and along the strata of subterranean soils that exist in this case. All these, and doubtless many other conditions are involved in the practical working of driven wells, and the proper solution of the question to be determined by the jury in this case. These principles and conditions are only known to, or can be appreciated or applied by men of science and experience. They were not proved in this case, and if an attempt had been made to prove them by witnesses, it would have been quite impossible to have communicated to the jury, or for the jury to have rightly apprehended and to have properly applied them to the question upon trial.

This case, it seems to me, very plainly belongs to that class which is described in the language of Judges EARL and BRADLEY above quoted as allowing, if not requiring, opinion evidence, and not to that class of cases in which those learned judges held this species of evidence not to be admissible. Those cases were *Ferguson* v. *Hubbell* and *Schwander* v. *Birge* (*supra*). The former of these cases was an action to recover the damages which plaintiff has sustained in consequence of the negligence of the defendant in setting fire to his fallow, and thus burning plaintiff's house and barn.

After testimony had been given by various witnesses in relation to the condition of the land, the state of the weather, and of the wind and various other circumstances surrounding the fire, the defendant in his own behalf testified that he was a farmer and had himself, and had seen others clear land, was asked, " What do you say as to whether or not as to that

time the fires were set there at that place, it was a proper time in your judgment for burning log heaps on a fallow that had been burned over?" The question was objected to and the objection was overruled and the answer received. The General Term affirmed the ruling but the Court of Appeals reversed the same. Judge EARL wrote the opinion and in the opinion used the hereinbefore quoted language indicating in what class of cases opinion evidence is proper, and distinguishing the case then under consideration from that class by the use of the following language: "Where the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then there is no occasion to resort to expert or opinion evidence. To require the exclusion of such evidence, it is not needed that the jurors should be able to see the facts as they appear to eye witnesses or to be as capable to draw conclusions from them as some witnesses might be, but it is sufficient that the facts can be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them, can base intelligent judgments upon them and comprehend them sufficiently for the ordinary administration of justice."

Judge EARL also refers to similar cases, *Fraser* v. *Tupper* (29 Vt. 409) and *Higgins* v. *Dewey* (107 Mass. 494), decided in the same way and upon same grounds.

The case *Schwander* v. *Birge* (46 Hun, 67) was an action to recover the loss sustained by the plaintiff for the negligence of the defendant in so constructing his building or factory, that the plaintiff's intestate, who was an employee of the defendant, could not escape from the fire which consumed the building. The plaintiff's intestate was upon the fifth floor of the building when the fire was discovered in the lower part of the building. The length, height and structure, including hallways, doors of egress to the roof and adjoining buildings, etc., etc., were proven.

After this evidence, a witness in behalf of defendant was

asked this question : " Was that, in your judgment, a proper and sufficient mode of access and egress from the building under any circumstances that might occur ?" The question was allowed and answered over an exception and the plaintiff had a recovery. The General Term reversed the judgment, holding that the question was improper. Judge BRADLEY, writing the opinion at General Term, held that the case did not fall within the class admitting opinion evidence in the language hereinbefore quoted, for the reasons stated in the following language: " And it is difficult to see that it came within the rule permitting the opinions of experts. This building was 161 feet in length and forty-seven feet in width, and the evidence tends to show that the room occupied the entire space on that floor between the outer walls. The location of the stairs and door, the distance from them to remote parts of the room could be stated and complete description of the room given so as to convey to the jury an intelligent understanding of the situation. And when that can be done the rule requires that the testimony of witnesses shall be confined to a statement of the facts, and that the conclusions or opinions of witnesses be not permitted as evidence."

I have thus far considered the main, if not the only question in this case. There is no occasion to consider any other, for it is conceded, in the opinion of the majority of my brethren, that the witness was an expert and was conceded by the ground of the objection to his evidence to be an expert. (*Schwander* v. *Birge*, 46 Hun, 68; *Stevens* v. *Brennan*, 79 N. Y. 255.) Nor that the question proposed to the witness was or was quite near to the question to be decided by the jury. (*Curtis* v. *Gokey*, 68 N. Y. 426 ; *Transportation Line* v. *Hope*, 95 U. S. 297), and other cases cited in opinion of Brother BROWN in this case.

Some criticism is made in that opinion in relation to the form and point of the question asked, " whether it was possible for the pumps to draw the water from the creek ? " and that a negative answer to it would not have explained the disappearance of the stream. While that is quite true, I do not perceive

that the defendant was bound to account for its disappearance any further than to show that it was not caused by the driven wells. That was the charge plaintiff made and his sole grievance against the defendant, and that was all that devolved upon the defendant to deny or disprove. The defendant was not bound to account for all natural or unnatural phenomena in relation to the water of this creek, under a penalty of $6,000 and costs of suit for its failure to do so.

I think the order or judgment of the General Term should be affirmed with costs.

All concur with BROWN, J., except FOLLETT, Ch. J., POTTER and HAIGHT, JJ., dissenting.

Order reversed and judgment affirmed.