MARIA L. DAVIS, as Administratrix, etc., of IRA C. DAVIS, Deceased, Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Opinion evidence — not competent, where the facts are descriptive and intelligible.*

On the trial of an action brought to recover damages for a personal injury caused by the giving way of a partition or "crib" in certain coal storage bins, a civil engineer was permitted to answer, as a witness for the plaintiff, questions calling for his opinion as to the safety of the crib in question.

*Held*, that this was improper, as the questions and answers trespassed upon the functions of the jury in deciding upon questions of fact (PRATT, J., dissenting).

The doctrine applied that opinions are to be admitted in evidence only where the facts are not descriptive and cannot intelligently be communicated to others.

APPEAL by the defendant, the New York, Lake Erie and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Rockland county on the 5th day of December, 1892, upon a verdict rendered at the Rockland Circuit, and from an order denying the defendant's motion for a new trial, made upon the minutes.

The action was brought to recover damages for the death of the plaintiff's intestate, which was alleged to have resulted from the defendant's negligence in the construction and maintenance of a "crib" or partition in certain coal storage bins on a dock at Piermont, which gave way and precipitated a mass of coal upon the deceased while he was engaged in shoveling coal as an employee of the defendant.

It was claimed by the plaintiff that the defendant was guilty of negligence : (1) Because of improper construction of the "crib" or partition ; (2) because of improper material used in the construction of the partition ; (3) because of failure to properly maintain the partition, and (4) because of improper removal of the coal from the bins or compartments formed by the partitions.

On the trial the plaintiff introduced as a witness John W. Ferguson, who testified that he was a civil engineer, and had been for about fifteen years ; that he had been in the employ of the defendant railroad company, and had constructed for it structures for retaining coal ; that he constructed the trestle at Piermont on which

the railroad track was there; that he had nothing to do with the erection of the coal bins there, but built the boxes by which they were partitioned.

The witness continued as follows:

"These boxes consisted of hemlock planks two inches thick and twelve inches wide, I think, and about sixteen feet long. They were made by simply two sides, there being no bottom or top to them, and they were separated one from the other about eighteen inches with a vertical piece between the sides. (Referring to model) I should say that was a fair representation of the box.

"Q. What was the intent and purpose of these structures? That is, was it intended that they should be permanent or temporary? A. Temporary. This pier at Piermont was divided into a series of bins, separated by partitions called cribs. The cribs were made of the boxes I have just described.

"Q. How were these boxes intended to be fastened together, if at all? A. They were not intended to be fastened together, that is, one above the other.

"Q. What was intended to keep them in their places? A. By tie pieces extending out either side, and by the weight of the coal placed between the two boards forming the boxes. The tie pieces are called anchors. Those sticks (referring to model) represent those anchors.

"Q. What was the length of those anchors? A. Well, I could not say as to the length used at any one time, but when the bins were first used, they were hemlock boards about sixteen feet long."

Thereafter, in the course of his direct-examination, the witness was asked the following questions by the plaintiff's counsel:

"Q. State what, in your opinion, should have been the length of anchors in the division cribs between these bins in this structure when the coal on one side is built to the height of twenty-five to forty feet? [Objected to on the same grounds as before. Objection overruled. Defendant's counsel excepts.] A. From eight to ten feet to sustain it, extending on each side of the box or into the pile of coal that was high.

"Q. What is the purpose of these anchors in this structure? [Objected to as incompetent and improper, as the witness cannot state what the purpose is.]

" THE COURT. — If he has any special knowledge as to the purpose which they subserve in sustaining a pile of coal, he may state it. [Objection overruled. Defendant's counsel excepts.]

" A. They serve two purposes. One to keep the boxes together, one above the other, by means of the cleats, and the other to tie the upper ones back to the pile of coal.

" Q. State whether an anchor eighteen inches in length, at a point anywhere above a foot and a half from the surface, would sustain any pressure? [Objected to by defendant's counsel as incompetent and improper and a matter of speculation. Objection overruled. Defendant's counsel excepts.] A. In my judgment, it would not.

" Q. State whether or not an anchor would have to extend into the coal beyond the line of the natural rest of coal in order to tie the structure to that pile of coal? [Objected to by defendant's counsel on same grounds as before. Objection overruled. Defendant's counsel excepts.] A. Yes, sir; it would have to. That line varies with the height from the ground, being as many feet from the crib as you are from the ground at any given point. That is to say, at a point ten feet from the ground, the line of rest would be ten feet from the crib, since the coal stands on an angle of forty-five degrees. I directed the making of the boxes used at Piermont. I was in the employ of the Erie Railroad Company. I did not have the anchors made. The boxes were made of hemlock timber."

*Lewis E. Carr*, for the appellant.

*Frank Comesky*, for the respondent.

BARNARD, P. J.:

The death of the plaintiff's intestate was occasioned by the same accident which occasioned the injury to George Gerbig, whose case was heard upon appeal in the court at the last December (1892) term. The questions put to the witness Ferguson, a civil engineer, calling for his opinion as to the safety of the crib which gave way and caused the accident, are similar in principle to the questions considered in the *Gerbig* case. It was therein held that the questions admitted assumed the functions of the jury upon questions of fact.

The judgment and order refusing a new trial should be reversed and a new trial granted, costs to abide event, on the opinion in the *Gerbig* case.*

DYKMAN, J., concurred.

* The opinion of the General Term, in the case of *Gerbig* v. *New York, Lake Erie & Western R. R. Co.*, is as follows:

"BARNARD, P. J.   The plaintiff, on the 27th day of November, 1891, was injured by the giving way of a partition by which a great mass of coal was thrown upon him.   He was an employee of the defendant, and was loading coal from a bin on the pier at Piermont.   After the bin in which he was working had been partially removed, the partition between this bin and the next one east gave way, causing the accident.   The partition was constructed with hemlock timber. The partition and bins were constructed in the usual way, and there was no objection that the accident was caused by an unsafe or faulty plan.   Proof was given tending to show that the timber (hemlock) was such as is commonly used for that purpose.   Under this state of evidence, it was improper to permit this question :   ' You have made cribs or bins or partitions to hold quantities of coal — fifty or a hundred tons.   Is hemlock a proper material to use for that purpose ? '   The question was objected to, and admitted under defendant's exception.   The answer was as follows:   ' Well, it depends altogether on how you use it, of course.   If you use hemlock alone, it is not worth much; but, where I have built bins, we take posts of chestnut, and then board them up. Well, the posts hold, certainly.   The hemlock is just to keep the coal from running in through the posts.   Question.   Would the hemlock alone be sufficient to support ?   [Same objection, ruling and exception as before.]   Answer.   No; it would not.'   It was error to permit the question of the sufficiency of the anchors. It was proven that braces of timber were connected with the partition, and run into the next bin, so that the weight of the coal in that bin, when it was filled, would hold, by means of these braces or anchors to the partition.   The coal being filled in these braces, and holding them by its weight, a question was received, under defendant's exceptions, that they were not sufficient to hold the crib work.   The Court of Appeals, in a recent case, has examined the admissibility of such testimony.   (*Roberts* v. *Railroad Co.*, 128 N. Y. 455; 28 N. E. Rep. 486.)   Under that case these questions were not proper, as exceptions to the general rule of evidence that testimony should consist of facts, and not opinions; that, whenever opinions are admitted, it is in cases where the facts are not descriptive, and cannot intelligently be communicated to others.   (*Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424; 24 N. E. Rep. 179.)   It is not, therefore, necessary to examine the question whether the proof established a case of negligence on the part of the defendant, under all the proof, as it was given, and assuming this evidence to have been properly received.   A new trial may change it.   The judgment and order denying a new trial should be reversed, and a new trial granted, costs to abide event.   All concur."

PRATT, J. (dissenting) :

This is an appeal from a judgment entered upon a verdict by a jury, and from an order denying a motion for a new trial upon the minutes.

It is objected that a photograph of a portion of the bin where the accident did not take place was admitted in evidence.

It was admitted solely for the purpose of showing the plan of construction, and so qualified by the court. There was no dispute that it correctly showed the general plan of construction, and in no way could mislead the jury or prejudice the defendant. (*McCarragher* v. *Rodgers*, 120 N. Y. 532, and cases there cited.)

Neither do we think it was error to admit the opinion of experts. The questions in issue were not subjects of general knowledge, but involved engineering skill and long practical experience to elucidate.

It has always been allowed to examine experts in mechanics, such as bridge building, the operation of all kinds of machinery ; in fact, in almost every art and science.

The structure of these bins, the direction and amount of strain to be applied when used ; the size, strength and durability of the material and the manner in which it was constructed, were subjects that could not well be placed before the minds of the jury by a mere description. It required peculiar knowledge and skill, and was the result of practical experience.

In *Oties* v. *Cowles Electric S. & A. Co.* (7 N. Y. Supp. 251), the plaintiff was injured by the fall of a derrick, and the court held that it was competent to show by the evidence of experts what was a safe and proper way of erecting and supporting the mast.

The rule is well stated by Mr. Justice BROWN, in *Van Wycklen* v. *The City of Brooklyn*, " The governing rule deduced from the cases permitting the opinion of witnesses is, that the subject must be one of science or skill, or one of which observation and experience have given the opportunity and means of knowledge, which exists in reasons rather than descriptive facts, and, therefore, cannot be intelligently communicated to others not familiar with the subject, so as to possess them with full understanding of it." Under this rule we think the evidence was properly admitted.

It may be said that all expert evidence, although given in the form of an opinion is, nevertheless, this of facts which skill and

experience have taught the expert always exist in connection with certain other facts.

Take the ordinary case of asking a physician or surgeon the cause of death where full history of the case is given. He answers in the form of an opinion, but it is, nevertheless, a fact which he knows from experience always follows the facts submitted in the particular case.

Such facts are known to the expert to the same degree of certainty that a mathematician knows the result of a problem in mathematics.

Much stress is laid upon the contention that the evidence does not support the verdict. If it was the duty of the jury to believe all the testimony of defendant's witnesses without qualification, and notwithstanding the other facts in the case, there may be some foundation for this contention, but it was the right of the jury to pass upon the whole evidence, and we cannot say the verdict is not fully sustained by the evidence.

Taking into consideration all the evidence, the jury were at liberty to find neglect of duty on the part of defendant in several particulars, and they have done so, and the verdict must stand.

The judgment must be affirmed, with costs.

Judgment and order denying new trial reversed and new trial granted, costs to abide event.