JAMES FERGUSON, Appellant, v. FREDERICK B. HUBBELL, Respondent.

97   507
118   429
118   430
118   439
118   440

97   507
120   321
97   507
123   233
97   507
125   123
97   507
128   465

97   507
152   344

97   507
156   113

97   507
159   193

97   507
163   534

97   507
165   233
d165   598
j165   602

Defendant leased to H. certain lands to work on shares, and agreed to pay the latter a specified sum per acre for clearing so much of the land as he should choose to clear. In the work of clearing, H. set fire to some wood and brush, and, as was alleged, the fire spread to plaintiff's adjoining lands and burned buildings thereon. In an action to recover the damages, *held*, that in clearing the land H. was an independent contractor — not a servant or employe ; and that for his negligence in doing the work the defendant was not liable.

Defendant also, for the purpose of clearing a portion of his land not leased to H., set a fire thereon, which also spread on to plaintiff's land, and there was some evidence to show that this fire destroyed the buildings. There was evidence tending to show that, at the time, the land was very dry, and the wind was blowing strong in the direction of plaintiff's land. Various witnesses called by defendant, after testifying to the circumstances, and that they were farmers and accustomed to clear lands, were allowed to testify, under objection and exception, that, in their opinion, it was a proper time to burn a fallow. *Held* error ; that the subject of inquiry was not one requiring or authorizing expert evidence.

The opinions of experts may not be received in evidence where the inquiry is as to a subject which does not require any peculiar habits or study in order to qualify a man to understand it.

It is not sufficient to authorize such testimony that the witness may know more of, and may better comprehend, the subject than the jury, but it must relate to some trade, profession, science or art, in which persons instructed by study or experience may be supposed to have more skill and knowledge than jurors of average intelligence.

Where the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form an opinion in reference to, and to draw inferences from, them as witnesses, the opinions of witnesses are not competent.

*It seems* that such evidence should be received only in cases of necessity.

The authorities as to the cases not within the range of expert evidence collated.

*Hays* v. *Miller* (6 Hun, 320), *S. C.* (70 N. Y. 112), distinguished.

*Ferguson* v. *Hubbell* (26 Hun, 450), reversed.

(Argued November 26, 1884 ; decided December 16, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made February 10, 1882, which affirmed a judgment in favor of defendant, entered upon a verdict. (Reported below, 26 Hun, 250.)

This action was brought to recover damages alleged to have been sustained by plaintiff in consequence of the negligence of defendant.

The facts sufficiently appear in the opinion.

*N. P. Hinman* for appellant. The court erred in the refusal to charge that negligence on the part of Charles Hammond in setting the fire or the management of the same could render the defendant liable in this action. (*Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 126.) Defendant Hubbell being the owner of the land, the law imposed a duty upon him to so use it as not to injure his neighbors. (*Brusso* v. *City of Buffalo*, 90 N. Y. 679–680; 67 id. 258; id. 284.) . In determining whether a person is a " contractor " or not, the circumstance that he always serves the same person affords a very strong presumption that he has no independent occupation. (Shearm. & Redf. on Neg., §§ 76, 78; *Dressil* v. *City of Kingston*, 32 Hun, 533.) The court erred in permitting the defendant to state whether the fire was set by him at a proper time. (*Teall* v. *Barton*, 40 Barb. 137; 24 Alb. L. J. 192; *Hover* v. *Barkoff*, 44 N. Y. 117; *Crofat* v. *Brooklyn Ferry Co.*, 36 Barb. 209; *Cleveland* v. *N. J. Steamboat Co.*, 5 How. 523.)

*S. Brown* for respondent. Charles Hammond was not the servant of the defendant. The relation of master and servant did not exist between them. This being so, and the work contracted for by the defendant being lawful and not necessarily producing the injuries complained of, he is not responsible for the damages caused by the fire from Hammond's fallow, whether Hammond was guilty of negligence or not. (*Pack* v. *Mayor, etc.*, 8 N. Y. 222; *Kelly* v. *Mayor, etc.*, 11 id. 432; *Blake* v. *Ferris*, 5 id. 48; *Forsyth* v. *Hooper*, 11 Allen, 419; *Hilliard* v. *Richardson*, 3 Gray, 349; *Slater* v. *Mersereau*, 64 N. Y. 138; *Town of Pierrepont* v. *Loveless*, 72 id. 211; *Earl* v. *Beadleston*, 42 N. Y. Sup. Ct. [J. & S.] 294; *McCafferty* v. *S. D. & P. M. R. R. Co.*, 61 N. Y. 178; *Kepperley* v. *Rainsdew*, 83 Ill. 354; *King* v. *N. Y. Central & H. R. R.*

*R. Co.*, 66 N. Y. 181; *Gaughran* v. *Smith*, 75 id. 205.) The exceptions to the ruling admitting the testimony of witnesses who were on the ground, and had had experience in burning fallows, on the subject of whether it was a proper time to set the fire or burn the log heaps, are not well taken. (*Clark* v. *Baird*, 5 Seld. 183; *Robertson* v. *Knapp*, 35 N. Y. 91; *Albright* v. *Conley*, 40 Texas, 105; *Baltimore, etc., R. Co.* v. *Thompson*, 10 Md. 80; *Lane* v. *Wilcox*, 55 Barb. 617; *Merrill* v. *Grinnell*, 30 N. Y. 594; *Moore* v. *Westervelt*, 27 id. 236; *King* v. *N. Y. C. & H. R. R. R. Co.*, 72 id. 607; *Blake* v. *People*, 73 id. 586; *Sloan* v. *N. Y. C. R. R. Co.*, 45 id. 125; *Hay* v. *Miller*, 70 id. 116; *Brink* v. *Hanover F. Ins. Co.*, 80 id. 115.) In an action based upon the statute (3 R. S., part 1, chap. 20, title 14 [7th ed.] 2086), a verdict will not be set aside when in favor of the defendant on the sole ground that it is against evidence. (*Sawyer* v. *Smith*, 1 Denio, 207; *Stuart* v. *Hawley*, 22 Barb. 619; *Calkins* v. *Borger*, 44 id. 424.)

EARL, J. On the 17th day of May, 1880, and for a long time prior thereto, the plaintiff owned a certain lot of land numbered 104 in the county of Warren in this State, and the defendant owned lot 116 situated north of 104, and lot 105 situated west of 104. The defendant had leased lot 105 to Charles Hammond to work upon shares, under an agreement by which each party was to furnish half the seed and have half the crops, and the defendant was to pay Hammond $10 per acre for clearing so much of the lot as he should choose to clear. On Thursday, the 13th day of May, Hammond, for the purpose of clearing up a portion of his lot, set fire to some wood and brush thereon. That fire burned moderately and smouldered Friday, Saturday, Sunday and until Monday, when the wind began to blow and the fire started up and passed out of that lot upon lots 116 and 104. On Monday, the 17th, in the forenoon, the defendant, for the purpose of clearing up a portion of lot 116, set a fire upon that lot, and either at the time he set the fire or shortly after, the wind began to blow a sharp gale. One or both of the fires thus set upon these

two lots passed upon lot 104 and set fire to and burned down a house and barn upon that lot belonging to the plaintiff; and this action was brought by him to recover his damages thus sustained.

Upon the trial it was a disputed question whether the fire which burned the buildings came from that set upon lot 105 by Hammond, or from that set upon lot 116 by the defendant; and the claim of the plaintiff was that, if it came from either of those lots, the defendant was liable. But the defendant claimed that he was not liable for any damage done by the fire set by Hammond. The trial judge decided, and so instructed the jury, that in clearing upon lot 105 Hammond was an independent contractor and not a servant or employe of the defendant, and hence that the defendant was not liable for his negligence; and he charged the jury that if they found that the plaintiff's buildings were burned by the fire set by Hammond, they should render a verdict for the defendant.

We think the court was right in holding as matter of law that the defendant was not liable for the negligence or wrong of Hammond. Hammond was engaged in clearing upon lot 105 under a contract with the defendant to clear by the acre. He could perform his contract by carting the wood and brush away from the lot, or by burning it upon the lot. The defendant had no right to interfere in the work. Hammond was to employ his own help, and he could control and direct them, and choose his own time, and the defendant had no right to direct or control him in the manner in which he should do the work. He was, therefore, in no sense the servant of the defendant so that the doctrine of *respondeat superior* could apply. The defendant was entitled to the results of his labor, and could enjoy its fruits, but he could not direct the manner in which it should be performed. (*McCafferty* v. *S. D. & P. M. R. R. Co.*, 61 N. Y. 178.) The case cited is a precise and sufficient authority. If instead of clearing off the wood and brush upon the lot, the contract had been to blast and remove rock, and if in blasting the rock portions of it had been thrown upon neighboring lands and there done damage, the defendant,

under the case cited, would not have been liable ; and there certainly can be no difference in principle, as bearing upon the question now under consideration, between a contract to clear off wood and brush and one to blast and remove rock. This was not a contract with Hammond to produce a nuisance or to do an act upon defendant's land which was necessarily dangerous. It was a contract to do a lawful thing, which if done in a proper manner would be reasonably safe to the owners of adjoining property.

The case was submitted to the jury to determine whether the fire which destroyed the buildings came from lot 105 or from lot 116, and they were also permitted to determine, if it came from lot 116, whether it was set at a proper time and managed in a proper manner. They found generally for the defendant, and it is impossible to know whether they based their verdict upon the ground that the fire was set upon lot 105, or upon the ground that it was set at a proper time, and managed in a careful manner upon lot 116. And it is therefore necessary to inquire whether error was committed in the rulings to which we will now call attention.

There was evidence tending to show that the fire was set upon lot 116 by the defendant at a time when the land was very dry, and when the wind was blowing a strong gale in the direction of the plaintiff's lot. The defendant's witnesses gave evidence as to the condition of the land, the state of the weather, and of the wind and various other circumstances surrounding the fire. As a witness in his own behalf, he testified that he was a farmer, and that he had cleared and seen others clear land, and then he was asked this question: "What do you say as to whether or not as to that time, the fires were set there at that place, it was a proper time in your judgment for burning log heaps on a fallow that had been burned over?" The question was objected to on the part of the plaintiff as calling for a conclusion of the witness on a subject not proper to give an opinion; that the witness could only state facts, and the jury must draw the conclusions. The trial judge remarked that the evidence would be received upon the principle that

the witness was shown to have superior knowledge upon that subject. The plaintiff excepted to the ruling, and the witness answered, "I thought it was." Another witness, who was shown to have had experience in clearing land, was asked this question : " How was it at that time as to being dry enough for a proper time to burn a fallow ? " which was objected to on the part of the plaintiff as calling for a conclusion. The objection was overruled and the witness answered : " It was dry enough." Another witness who was also shown to have had experience in clearing land was asked this question : " What do you say as to whether it was a proper time or not to burn a fallow ? " to which there was the same objection and ruling, and he answered : " I should say it was a proper time to burn it, and advised him that way that day."

We think there was some evidence from which a jury could have found, that the fire which destroyed plaintiff's buildings came from lot 116, and the jury may have found from the answers to these questions that the fire was set at a proper time, and thus may have been influenced to find their verdict in favor of the defendant.

It is contended on behalf of the plaintiff that the questions objected to were improper, and that the subject of the inquiry was not one proper for expert evidence. The questions related to a vital point in the case. The principal claim on the part of the plaintiff was that, in consequence of the wind and the dryness of the ground, and the wood, brush and timber, it was an improper time to set fire ; and whether it was or not, was the main question to be determined by the jury if they reached the conclusion that the fire came from lot 116. These witnesses were therefore asked their opinions upon a controlling issue which was to be determined by the jury. In answering the questions they did not testify to facts, and they did not tell what they knew as matter of knowledge. They simply expressed opinions which were based upon the facts as they existed. The general rule of law is that witnesses must state facts within their knowledge, and not give their opinions or their inferences. To this rule there are some exceptions, among which is ex-

pert evidence. Witnesses who are skilled in any science, art, trade or occupation, may not only testify to facts, but are sometimes permitted to give their opinions as experts. This is permitted because such witnesses are supposed, from their experience and study, to have peculiar knowledge upon the subject of inquiry which jurors generally have not, and are thus supposed to be more capable of drawing conclusions from facts, and to base opinions upon them, than jurors generally are presumed to be. Opinions are also allowed in some cases where, from the nature of the matter under investigation, the facts cannot be adequately placed before the jury so as to impress their minds as they impress the minds of a competent, skilled observer, and where the facts cannot be stated or described in such language as will enable persons not eye witnesses to form an accurate judgment in regard to them, and no better evidence than such opinions is attainable. But the opinions of experts cannot be received where the inquiry is into a subject, the nature of which is not such as to require any peculiar habits or study in order to qualify a man to understand it.

It is not sufficient to warrant the introduction of expert evidence that the witness may know more of the subject of inquiry, and may better comprehend and appreciate it than the jury; but to warrant its introduction, the subject of the inquiry must be one relating to some trade, profession, science or art in which persons instructed therein, by study or experience, may be supposed to have more skill and knowledge than jurors of average intelligence may be presumed generally to have. The jurors may have less skill and experience than the witnesses and yet have enough to draw their own conclusions and do justice between the parties. Where the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then there is no occasion to resort to expert or opinion evidence. To require the exclusion of such evidence, it is not needed that the jurors should be able to see the facts as they appear to eye-wit-

nesses or to be as capable to draw conclusions from them as some witnesses might be, but it is sufficient that the facts can be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them, can base intelligent judgments upon them and comprehend them sufficiently for the ordinary administration of justice.

The rules admitting the opinions of experts should not be unnecessarily extended. Experience has shown that it is much safer to confine the testimony of witnesses to facts in all cases where that is practicable and leave the jury to exercise their judgment and experience upon the facts proved. Where witnesses testify to facts they may be specifically contradicted, and if they testify falsely, they are liable to punishment for perjury. But they may give false opinions without the fear of punishment. It is generally safer to take the judgments of unskilled jurors than the opinions of hired and generally biased experts. A long time ago in *Tracy Peerage* (10 Cl. & Fin. 154, 191) Lord CAMPBELL said, that skilled witnesses came with such a bias on their minds to support the cause in which they are embarked, that hardly any weight should be given to their evidence. Without indorsing this strong language which is, however, countenanced by the utterances of other judges and of some text writers, and believing that opinion evidence is in many cases absolutely essential in the administration of justice, yet we think it should not be much encouraged and should be received only in cases of necessity. Better results will generally be reached by taking the impartial, unbiased judgments of twelve jurors of common sense and common experience than can be obtained by taking the opinions of experts, if not generally hired, at least friendly, whose opinions cannot fail generally to be warped by a desire to promote the cause in which they are enlisted.

From a careful examination of many cases in this and other States, we are satisfied that the questions objected to in this case should have been excluded.

In *Fraser* v. *Tupper* (29 Vt. 409), in an action like this, a question entirely similar to this, was held to be inadmissible.

There the defendant offered to prove by farmers who were acquainted with the clearing of land by burning the same, and who were upon the land the day the fires were set, and who described to the jury, as well as they could, the position of the fire and the force and direction of the wind, that in their opinions it was a suitable and proper and safe day for setting the piles on fire with reference to the position of the piles in respect to the plaintiff's coal, and the force and direction of the wind. To this evidence the plaintiff objected, and it was excluded by the court, and to its exclusion the defendant excepted, and it was held that the ruling was proper. In the opinion of the court it is said: " There could be no difficulty in this case in the witnesses stating to the jury the position of the fires which were set by the defendant, their number and magnitude, the direction and course of the wind, the position, distance and character of plaintiff's property and its exposure to injury from that source. The jurors, upon the question whether the defendant exercised proper care, could form as definite opinion, from the facts stated by the witnesses, as the witnesses themselves. The subject-matter is not one of science or skill, but is susceptible of direct proof, and in most cases the triers themselves are qualified from experience in the ordinary affairs of life, duly to appreciate the material facts when found. If there is any materiality attached to the force of the wind on that day, we do not see any difficulty in conveying a true idea of it sufficient at least for all practical purposes."

In *Higgins* v. *Dewey* (107 Mass. 494) the action was also like this, and the defendant offered to prove by a surveyor and civil engineer of many years experience in clearing land by fire, who had observed the effects of wind on fires in different localities, and had been upon the land where the defendant set his fire and made a plan of it and was acquainted with the surrounding country, that there was no probability that a fire set under the circumstances in the case, as described by the witnesses, would be communicated to the plaintiff's land; but the judge excluded the evidence, and his ruling was held to be proper, on the ground that the evidence offered related

to a subject within the common knowledge of the jury. In
*Luce* v. *Dorchester Mutual Fire Ins. Co.* (105 Mass. 297), the
action was to recover for a loss on a policy of insurance
against fire upon a dwelling-house which the plaintiff had left
unoccupied at the time of the loss, and for some time before;
and the opinions of witnesses that leaving a dwelling-house
unoccupied, for a considerable length of time, increased its
liability to be destroyed or injured by fire, were held to be in-
admissible, on the ground that the subject was within common
knowledge. In *Sowers* v. *Dukes* (8 Minn. 23) the action was
to recover for a breach of contract in neglecting to build and
keep in repair a fence around a certain field whereby plaintiff's
crops were injured. Upon the trial the plaintiff, a witness in his
own behalf, was asked this question: "Was the fence a
proper fence to turn stock, and could they easily put their
heads through between the fence and rider?" This question
was objected to, on the ground that the jurors were the
proper judges as to whether the fence was sufficient after it
had been described. The objection was overruled and the
witness was permitted to answer; and the question was held
to be incompetent, and the judgment was reversed for that
reason. It was held that the witness should have stated the
facts; that the jury should have based their judgments upon
the facts, and that it was not a proper subject for opinion evi-
dence. In *Enright* v. *S. F. & S. J. R. R. Co.* (33 Cal. 230),
in a suit against the defendant for injury to plaintiff's cattle
caused by an insufficient fence, it was held that the evidence of
farmers that the fence was sufficient to turn cattle was im-
proper. In *Bills* v. *City of Ottumwa* (35 Iowa, 109) the de-
fendant was sued for injuries to the plaintiff alleged to have
been sustained, in consequence of the bad condition of the
street which caused him to be thrown from a wagon loaded
with hay; and it was held, that the opinion of a farmer, that
a wagon loaded in the manner in which the one was upon
which the plaintiff was riding was not safe for riding upon
over ordinary roads, was inadmissible. In *Concord R. R.* v.
*Greely* (23 N. H. 237), in a proceeding to assess damages for

a right of way for a railroad, it was held that the opinion of a farmer, as to the effect upon a farm of a railroad passing through it, was inadmissible. In *Paige* v. *Hazard* (5 Hill, 603), in an action for negligence in injuring and sinking a canal boat, the plaintiff, after proving the cause of action as alleged, called a witness who testified that he was a boatman and knew the boat in question previous to her being injured, that he had raised sunken boats and caused them to be repaired, and he was then asked the following question : "From the description of the situation of the boat, as given by the witnesses, what would the damage be ?" and it was held improper and that the witness' answer was inadmissible. In *Teall* v. *Barton* (40 Barb. 137) the action was brought to recover damages caused by fire communicated by a steam dredge, and it was held that a question put to a witness, who had had experience, as to whether he considered it dangerous to use a steam dredge without a spark-catcher, was properly overruled, it not being a question of science or skill, and not falling within the rule relating to evidence by experts. In *McGregor* v. *Brown* (10 N. Y. 114) the action was by a landlord against his tenant for waste ; and it was held that the opinions of witnesses, that the acts complained of were not injurious to the inheritance, and, therefore, not waste, were inadmissible.

In all these cases it was held that the witnesses should be confined to a statement of the facts, and that it was the province of the jury to draw inferences and form judgments. In most of them it was as probable as it was here that some of the jurors might not know as much about the subject of inquiry, and not be as capable of forming opinions or drawing inferences from the facts as the witnesses ; and yet it was held, as the subjects of inquiry were of such a nature that jurors generally might be presumed to have sufficient knowledge of them to enable them to discharge their duty when the facts were placed before them, that it was safer to rely upon them than upon the opinions of witnesses however expert they might be. Here the subject of inquiry related to the common

elements of fire, and wind, and dry wood, and brush, and timber, with which every man has some acquaintance; and whether, under all the circumstances, it was a safe, prudent or proper act to set a fire, a jury with the common experience which, if not all men, most men have, would be sufficiently competent to form an opinion. This is not a case where it was impossible to place the facts before the jury. The character of the wind, the condition of the soil as to being dry or not, the character of the brush and timber, the nature of the ground, the distance, exposure, every thing, could be proved so that the jury would have substantially as correct knowledge in reference to it as the witnesses; if not as correct, they could acquire knowledge sufficiently correct to enable them to discharge their duty as jurors.

We have carefully examined the numerous cases cited in reference to this evidence in the brief of the learned counsel for the defendant, and none of them sustain its admission. They show that farmers may be permitted to give their opinions of the value of farms, and farm stock, and produce; that witnesses may give their opinions on questions of identity, or whether a person is under the influence of liquor, and as to many other matters. There is a broad range for expert evidence, but none of the authorities go far enough to hold that this evidence is within the proper range. The question of expert evidence was not involved in the case of *Hays* v. *Miller* (6 Hun, 320, and 70 N. Y. 112). The action in that case was brought to recover damages caused by fire to the lands of the plaintiff's intestate, through the alleged negligence of the defendant; and the referee, instead of passing upon the question of negligence directly as one of fact, made special findings of the circumstances, and from those found negligence as a conclusion of law, and he ordered judgment in favor of the plaintiff. The question under consideration upon the appeal was whether the inference of law was justified by the facts found. The appellant claimed that it was the duty of this court to review the conclusions of the referee, and decide, as matter of law, whether the facts and circumstances found by him established

that the burning upon the defendant's land was conducted in an improper and negligent manner, or at an improper time and season, or whether it was conducted in a proper manner and at a proper time; and we held that this court was not competent to draw the conclusions and inferences from the facts; that that was a matter for the referee, and that we were concluded by the inferences and conclusions drawn from the facts by him; and in discussing that question some language was used by the judge writing the opinion in this court which, it is claimed, favors the contention of the respondent here that these questions were proper to elicit expert evidence. But, as we have seen, the learned judge writing the opinion did not have in mind the subject of expert evidence, and was simply discussing the competency and power of this court to draw inferences from facts and circumstances found by the referee; and it was held, as we always hold in such cases, that the inferences are for the triers of facts.

We are, therefore, constrained to reverse this judgment and grant a new trial, as we think an important rule of evidence was violated. To uphold the propriety of these questions would carry the rule of expert evidence further than it has ever been carried in this State, and would be an unwarranted invasion of the rule which confines witnesses to facts, and excludes their opinions. It is important to maintain the rule in its integrity, and to permit as few invasions of it as the proper administration of justice will allow.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except MILLER, J., dissenting.

Judgment reversed.