CARRIE GUTWILLIG, EXECUTRIX, ETC., RESPONDENT, *v.* HERMAN ZUBERBIER AND WILLIAM J. BEHAN, APPELLANTS.

*Contract for the sale of an article manufactured by the seller — what obligations are imposed upon him — what constitutes a delivery — when not liable for deterioration occasioned by the shipment — when witnesses cannot express an opinion as to matters upon which the jury are to pass.*

Where a contract for the purchase of an article manufactured, or to be manufactured, by the seller contains no warranty as to what the condition or quality of the article should be, the law imposes upon the seller the obligation of delivering a merchantable article in ordinarily good condition.

When the delivery of the property is to be made by its shipment, delivery on board of the vessel, as directed by the purchaser, will, in judgment of law, operate as a delivery to him, and if the property, at the time of such delivery, is in the condition and of the quality which the purchaser is entitled to receive, that will constitute a performance of the agreement of sale.

This action, brought by the plaintiff to recover the price of twenty-five half barrels of cherry bounce, sold and shipped by steamer from New York to the defendants at New Orleans, pursuant to their direction, was defended by them upon the ground that the cherry bounce was, at the time of its receipt by them, in a state of fermentation and unmerchantable, evidence being given by them tending to prove that the bounce could not have been manufactured as it should have been, and that if it had been properly manufactured the fermentation would not have taken place.

Upon the trial witnesses called by the plaintiff were allowed, against the defendants' objection and exception, to answer the following questions: "Assuming that this cherry bounce, which you have heard described, was manufactured in the manner stated by the last witness, was it, in your opinion, a merchantable article, and fit to stand the journey from here to New Orleans?" "Then, as I understand you, if these beverages contained a percentage of twenty-five of spirits, when they left New York, they were perfectly merchantable and capable of sustaining the test of the journey to New Orleans, and would be merchantable when they arrived in New Orleans," and others of a similar character.

*Held,* that it was error to allow the witnesses to answer the questions, as the opinions expressed extended over the controverted part of the case and the witnesses, in answering them, usurped the province which the law has reserved for the jury.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, and an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Dewitt C. Brown,* for the appellants.

*Hall & Blandy,* for the respondent.

DANIELS, J. :

The verdict was recovered for the price of twenty-five half barrels of cherry bounce and ten half barrels of blackberry brandy. It was ordered by letter by the defendants from the testator, which was dated on the 19th of December, 1881. The defendants were engaged in business in the city of New Orleans, and the bounce and brandy were directed by the letter to be sent by steamer from the city of New York to them at the city of New Orleans. It was so shipped on or about the twenty-ninth of the same month, and arrived in New Orleans during the month of January. After it had been received by the defendants for a period of ten or fourteen days, the bounce was found to be in a state of fermentation and unmerchantable, while the blackberry brandy was in good order.

Notice was given by them to the testator, of the condition of the bounce and of their refusal to accept it. They were directed to add spirits to the bounce, which was expected to restore it to a merchantable condition. They did so, but while that had the effect of preventing further fermentation, the article itself proved to be

then unfit for use. . And upon these facts the defendants resisted the payment of the bill for the price of the cherry bounce.

To maintain the action proof was given, on behalf of the plaintiff, that the bounce was properly manufactured and in a merchantable condition at the time when it was placed on board the steamer to be carried to the city of New Orleans. And if that was the fact, and this fermentation was caused by some intervening circumstance over which the testator had no control, he performed his agreement and the risk of the property was upon the defendants.

There was no warranty as to what the condition or quality of the article should be, but where the contract is for the purchase of an article manufactured, or to be manufactured, by the seller, the law subjects him to the obligation of delivering a merchantable article in ordinarily good condition. (*Hoe* v. *Sanborn*, 21 N. Y., 552; *Howard* v. *Hoey*, 23 Wend., 350.) And when the delivery of the property is to be made by its shipment, delivery on board the vessel, as directed by the purchaser, will, in judgment of law, operate as a delivery to him or them. (*Rodgers* v. *Phillips*, 40 N. Y., 519; *Wilcox Silver Plate Co.* v. *Green*, 72 id., 17.) And if the property, at the time of the delivery, is in the condition, and of the quality, which the purchaser is entitled to receive, that will constitute a performance of the agreement for its sale. (*Mee* v. *McNider*, 39 Hun, 345.)

As the proof was given upon the trial, on behalf of the plaintiff, it had a direct tendency to establish the fact that the obligations for the performance of the agreement had been complied with on the part of the testator, and so the case was submitted by the court to the jury. The right of the plaintiff to recover was made exclusively dependent upon such a performance. After that direction had been plainly and fully given to the jury various requests were made for further instructions, and they were given as favorably as the defendant had reason to expect they would be, the court qualifying them generally by the principle to which reference has been made, governing the obligations of the seller of the property. It was suggested, on behalf of the plaintiff, that the bounce had fermented by reason of its being improperly stored near the machinery of the steamer, and carried in that manner from New York to New Orleans, but no evidence of improper stowage in this

or any other respect was given upon the trial, and the court was requested to direct the jury that there was no such evidence in the case, but this was united with the further request for the direction that the uncontradicted evidence showed that the fermentation was caused by lack of spirits, or other defect in the manufacture. That instruction the court, under the evidence, could not give, and the exception taken to the refusal to charge these two propositions together, can not be sustained.

The evidence, on behalf of the defendants, tended to prove that the bounce could not have been manufactured as it should have been, and if it had, this fermentation would not have taken place. Other dealings for bounce were had between these parties previous to this transaction, and the article shipped and received fully met the expectations of the defendants. To meet this evidence, proof was given on behalf of the plaintiff that the bounce in suit was manufactured in the same manner as that which had previously been sold and shipped to the defendants, and to avoid the effect of the evidence proving its condition after it was received in New Orleans, various questions were asked on behalf of the plaintiff, which, it is urged, the court erroneously permitted to be answered. By one of these questions a witness was asked whether, "assuming that this cherry bounce, which you have heard described, was manufactured in the manner stated by the last witness, was it, in your opinion, a merchantable article and fit to stand the journey from here to New Orleans?" He was also asked: "Then, as I understand you, if these beverages contained a percentage of twenty-five of spirits when they left New York, they were perfectly merchantable and capable of sustaining the test of the journey to New Orleans, and would be merchantable when they arrived in New Orleans?" Another witness, who had testified that the bounce had been properly compounded, if made according to a certain formula, was asked: "Would it be a beverage that would be merchantable in New Orleans and would stand the journey from New York to New Orleans?" He was also asked: "Then ordinarily if those goods were properly barreled and made air-tight, and if they received a fair share of treatment between here and New Orleans, they would be merchantable upon arriving at New Orleans?" These questions were all objected to as improper, and incompetent or irrelevant, and the court permitted

them to be answered, and the witness answered them affirmatively. And to the rulings of the court, allowing the answers to be given, exceptions were taken on behalf of the defendants. These questions, in their extent, include and extend over the ground of the controversy between the plaintiff and the defendants, and required the witnesses to determine, by their judgment and opinions, what it was in part the province of the jury to decide. There was no impropriety in inquiring of the witnesses familiar with the manufacture of the bounce, how long, and under what circumstances, it could be preserved in good condition, and what causes would probably produce fermentation, and that was as far as the opinions of the witnesses could be taken. After that it was for the jury to consider and decide whether the bounce was so manufactured as to be merchantable, or capable of sustaining the test, or risks of the journey from New York to New Orleans. It was further urged on behalf of the plaintiff, that if the fermentation was not caused by its improper stowage on the steamer, that then it may have been produced by exposure to the weather after its arrival at New Orleans. And these opinions were introduced in the case to create the impression, on the part of the jury, that the fermentation may have been produced in this manner, and by no improper manufacture or compounding of the article itself. Their opinions extended over the controverted part of the case, and usurped what the law has reserved as the province of the jury, and they should not have been received. (*Ferguson* v. *Hubbell*, 97 N. Y., 507, 512–516.)

These opinions were not harmless, for they met the substance of the issue between the parties, and because this evidence was received the judgment in the case should be reversed, and a new trial ordered, with costs to abide the event.

BRADY, P. J., concurred.

Judgment reversed, new trial ordered, costs to abide the event.