us there was no taking of chances, no attempt to make close calculations. The car was, according to plaintiff's testimony, upwards of 60 feet away when he looked and saw it approaching as he was about to cross the street, and he had 12 feet 4½ inches to walk to get entirely across the tracks. We cannot say, as matter of law, that plaintiff was negligent, or lacking in due care, when he assumed that he could walk 12 feet 4½ inches before the car would travel upwards of 60 feet. We are of the opinion that that was plainly a question for a jury to determine. Wells v. Railroad Co., 58 Hun, 389, 12 N. Y. Supp. 67; Friedman v. Railroad Co. (Com. Pl. N. Y.) 11 N. Y. Supp. 429, affirmed 110 N. Y. 676, 18 N. E. 482. Nor can we say, as matter of law, on all the evidence, that the driver of the car did all that a prudent man should have done. That is a question on which different conclusions might be reached by different men on hearing all the evidence on that point, and therefore it should have been submitted to the jury. Friedman v. Railroad Co., supra. The motion for a new trial on the minutes was, in our judgment, properly denied. As above stated, plaintiff's freedom from contributory negligence and the negligence of the defendant were questions that belonged to the jury to determine. There were frequent contradictions in the testimony of the witnesses on either side, and some discrepancies in the testimony of the various witnesses on the part of the defendant. The jury have decided in favor of plaintiff's contention after the law bearing on the case had been laid down by the learned trial judge in a charge to which no exception was taken, and we can see no reason for interfering with the verdict. Neither of the exceptions to the refusals to charge as requested seems to us to be well taken, or of sufficient importance to call for any discussion. For the reasons above stated, we think that the judgment and order denying motion for a new trial should be affirmed, with costs.

---

(10 Misc. Rep. 11.)

## MEYER v. BROOKLYN CITY R. CO.

(City Court of Brooklyn, General Term. October 22, 1894.)

1. STREET RAILROADS—INJURY TO PASSENGER—NEGLIGENCE.

In an action against a street-railway company for injuries to a passenger caused by collision with a wagon, it is proper, on cross-examination of defendant's motorman, to ask whether a certain appliance, with other appliances already enumerated by the witness to be used in order to stop a car quickly, would not make six in all.

2. EVIDENCE—EXPERT TESTIMONY.

Whether or not a wagon could have crossed a street-car track at a certain point without colliding with an approaching car is not the subject of expert testimony.

3. TRIAL—REFUSAL TO CHARGE AS TO EVIDENCE.

Refusal of the court to charge as to the evidence on a certain point, and leaving such question to the recollection of the jury, but offering to read portions of the testimony which counsel might call attention to, is proper, where the trial occupied several days, as the judge could not be expected to remember all the testimony in such case.

Appeal from trial term.

Action by Emil O. Meyer against the Brooklyn City Railroad Company for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before CLEMENT, C. J., and OSBORNE, J.

Morris & Whitehouse, for appellant.

Wm. C. De Witt, for respondent.

OSBORNE, J. Plaintiff, while riding on the front platform of one of defendant's electric cars going along Second avenue, was injured by reason of the car coming into collision with a four-horse beer truck seeking to cross Second avenue at Forty-Second street. Plaintiff obtained a verdict, on the ground that his injuries were caused by the negligence of the defendant, and from the judgment entered thereon, and the order denying motion for a new trial, this appeal is taken. The learned counsel for the appellant alleges for ground of reversal certain erroneous rulings of the trial judge, which we will proceed to examine.

The first ground of error alleged is the admission of the following question, put during the cross-examination of the motorman of the car in question. The witness was being cross-examined as to the number of the various appliances for stopping the car, and the following question was put by plaintiff's counsel:

"Q. On the front platform of this car, do you mean to say that the instrument [one for sanding the track] wasn't there? A. I didn't use it if it was there. I can't say it was or it wasn't. Q. If it were there, then there would be six instruments for the motorman to handle in case of a rapid stopping of the car, wouldn't there?"

This question was objected to, and an exception was taken to its admission, and the witness answered in the affirmative. We fail to see the slightest force in this exception, or how it could affect the result. The number of appliances for stopping the car was certainly a proper subject for cross-examination. The witness, in his answer just previous to the question excepted to, said that he did not know if the sanding instrument was on his car. Non constat but that counsel intended to prove by some other witness that it was there. How, then, could defendant's case be affected by the witness' admission that, if it was there, it would, with the other appliances he had already enumerated, make six in all to handle in order to stop the car quickly? Even if it was erroneous to allow the question, it must appear that it would have a tendency to excite the passions, arouse the prejudice, awaken the sympathies, or warp or influence the jury, to make its admission constitute error. Anderson v. Railroad Co., 54 N. Y. 334. That the admission of this question could not affect the result we are bound to conclude from the fact that the witness had already testified fully on this subject of the sanding machine, as appears by the following questions and answers, at folio 249:

"Q. Aren't you, as a motorman, called on to sand the track? A. Not always; no, sir. There is an instrument for sanding the track. It is on the car. It is on all the cars. It is underneath the seat at each end."

And again, at folio 251, and immediately preceding the question objected to, the witness testified as follows:

"Q. Now, we have got five instruments for the single motorman to use, all of which come in play when it is desirable to make a sudden stop of the car, haven't we? A. In case we have a train like I had that morning, yes, sir. Q. You started, I think, in your examination, with only two of them? A. To stop a car, but there is— Q. There seem to be five at least. Now, how about the sand? That would make a sixth one, wouldn't it? A. Yes, sir."

That exception is untenable.

Further ground of error is alleged in the exclusion of a question put to the witness Inman, who was called on the part of the defendant. He had testified that he saw the accident; that, when he first saw the horses attached to the beer wagon, they were walking on an ordinary walk; that, when the leaders got near the cross walk of Second avenue, the driver jerked his lines, applied his whip, and started his horses ahead; and that at that time the train was between 50 and 70 feet from Forty-Second street. He also testified that he "had had a great deal of experience with the operation of driving trucks and horses." Then the following question was put:

"Q. Now, if the driver of that beer wagon had not whipped up his horses, starting them ahead, as he did, when that train was within fifty or seventy feet of it, would there have been plenty of time for that team to have passed in safety? (Objected to by plaintiff's counsel.) The Court: That is a conclusion. Defendant's counsel: I will take an exception. The Court: Yes, and I state to you that you can ask him what extra speed he put on, and how far he went, but not his general conclusion. I will allow you to ask every element from which the witness can infer the conclusion that you ask. Defendant's counsel: I take an exception."

Plainly, this was an attempt on the part of the learned counsel for the appellant to get the opinion of the witness as an expert truck driver before the jury. We do not think that this was such a case or situation as to render expert testimony admissible. On the contrary, it was one where, with all the facts and circumstances before them, the jury were just as competent to answer the question for themselves as to rely on the opinion of the witness, be he ever so expert or experienced a driver. The court, as above shown, tendered counsel an opportunity to prove all the facts, all the elements from which a correct conclusion might be drawn by the jury, and that was all that the defendant was entitled to. As was said in Ferguson v. Hubbell, 97 N. Y. 507, at page 513:

"Where the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then there is no occasion to resort to expert or opinion evidence. To require the exclusion of such evidence, it is not needed that the jurors should be able to see the facts as they appear to eyewitnesses, or to be as capable to draw conclusions from them as some witnesses might be, but it is sufficient that the facts can be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them, can base intelligent judgments upon them, and comprehend them sufficiently for the ordinary administration of justice."

No one of the cases cited in appellant's brief sustains the position taken by the learned counsel for the appellant that the exclusion of the question was erroneous. We might go further, and sustain the exclusion of the question, on the ground that the witness was not fully qualified as an expert to answer it. A proper answer involved not alone experience in driving horses, but also some knowledge as to the speed of trolley cars and the ability of the witness to judge as to how rapidly the car was moving. On this latter point, he was not shown to possess any expert knowledge.

It is further contended that the learned trial judge should have charged the following request:

"Defendant's counsel: I ask your honor to charge the jury that there can in no view of the case be any recovery in this case by the plaintiff for loss of wages or earnings subsequent to the 1st day of January, 1893."

To this request the court replied:

"I think I will decline to charge that, and leave to the recollection of the jury the question of the evidence."

The defendant's counsel took an exception, whereupon the court said:

"If you call my attention to special parts of the evidence, I will have it read to the jury."

We do not think that this exception was well taken, in view of the fact that the decision of the point covered by the request was left to the jury to determine, on its recollection of the evidence, and that, coupled therewith, the learned trial judge offered to have read to the jury any special parts of the evidence relevant to the question to which defendant's counsel might call attention. The trial of this cause was begun on the morning of February 7, 1894, and was not concluded till the 9th. Some 20 witnesses were examined on the trial, and the testimony in the case on appeal covers 114 pages. It is unreasonable to assume or expect that, after such a protracted trial, the court should be able to recall at once the evidence on each particular point involved, and be prepared to say exactly what the evidence was thereon. The course of the learned trial judge in declining to charge the request as a matter of law, and in leaving it to the recollection of the jury to determine on the evidence, together with the offer to have read to the jury any special parts of the evidence to which defendant's counsel might call his attention, was eminently fair to the defendant, and we fail to see how this disposition of the request could be in any respect prejudicial to the defendant.

It is further contended that the learned trial judge erred in refusing to charge the following requests by defendant's counsel:

"I ask your honor to charge the jury that the testimony of the plaintiff as to whether his knee was cracked shall be disregarded, in the light of the testimony of Dr. Speir, Dr. Malone, and Dr. Fowler in this case. (Refused and exception.) I ask your honor to charge the jury now that in no view of the evidence can there be any recovery in this case on account ·of any cracked or fractured kneepan. (Refused and exception.)"

Immediately previous to the putting of the first of the above requests, a portion of the plaintiff's testimony as to his injuries was read from the stenographer's minutes, as follows:

"The dashboard turned back, and the pin that the bar handle goes onto damaged my left knee; that is, made an incised wound in the left knee. Q. Is that the knee in which you are still lame? A. Yes, sir. Q. How deep did it puncture the knee? Do you know? Didn't it pierce through the knee? A. It pierced right through the cap; yes, sir. Q. You don't know how deep it was? A. No, sir; I can't say how deep. Q. Was your knee affected? A. It was slightly cracked. Q. The kneepan? A. Yes, sir."

Dr. Speir, one of plaintiff's witnesses, testified that plaintiff had an injury over the right knee; that the left knee had a punctured wound over the patella or kneecap, and that it had penetrated in a way which produced an inflammation of the lining membrane of the kneejoint; that the patella was not fractured in either knee. Dr. Malone, another of plaintiff's witnesses, testified that when he first saw plaintiff, over two weeks after the accident, he "had an injury to both knees. There was a wound over the patella of the right knee, and a scar over the patella of the left knee." And both Drs. Speir and Malone testified that the injury to the left knee developed synovitis. We think that with this evidence before the jury, coupled with that of Dr. Fowler, the expert witness on the part of the defendant, it was not the duty of the court to direct the jury to disregard plaintiff's testimony in any particular. 'All of the evidence was before the jury. It was their duty to carefully weigh it all, to reconcile, if they could, apparent discrepancies, and to determine the facts. We can readily see how the plaintiff might have used the word "cracked" in the sense of "punctured" in describing the injury to his kneepan, and believe that he was testifying truly. Defendant was not, in our opinion, in any manner prejudiced by the refusals to charge as requested, as the court had already charged, in response to a previous request of defendant's counsel, that there was "no evidence that plaintiff's kneecap or kneepan was fractured, as claimed by plaintiff's counsel in his summing up."

In the course of the discussion arising out of the last-mentioned request, the learned trial judge incidentally said:

"As I understand, the testimony is that both of his kneecaps were punctured. That would be a fracture."

To this remark counsel for the defendant excepted, whereupon the trial judge said:

"That is as I understand the evidence; but, if that is not the evidence, I ask the jury to disregard entirely what I say upon the subject. If counsel will call my attention to that particular part of the evidence, I will have it read to the jury."

Even if we were convinced that the remark of the trial judge was erroneous, and afforded ground for a valid exception, such error was effectually cured by the direction to the jury to disregard entirely what the trial judge had said, and the offer to have read the particular part of the evidence bearing on the question.

We do not, however, desire to be understood as holding that the remark of the trial judge constituted reversible error.

For the reasons above stated, the judgment and order denying. motion for a new trial should be affirmed, with costs.