HELEN J. HOFFMAN, Respondent, v. THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellant.

*Expert testimony as to the cause of an accident, when inadmissible — a refusal to discharge a jury from the further consideration of a case, when proper.*

Where an accident is conceded to have resulted from the derailment of a train, but the vital issue in the case is whether the cause of such derailment was the negligence of the railroad corporation in not properly caring for its track and roadbed, or an inevitable accident, or the criminal intervention of some third party, the chief engineer of the railroad company, who testifies that he has made a careful examination of the situation, should not be allowed to state, when examined on behalf of his company, whether the condition of. the ties at the point of accident had any effect upon the cause of the derailment, or could, in his opinion, have contributed to it, nor should he be allowed to give his opinion, judging from his examination of the scene of the accident, as to the cause of the derailment.

Expert evidence is not made competent simply by the fact that the witness may know more of the subject of the inquiry and may comprehend and appreciate it better than the jury.

It cannot be said that there has been an unreasonable and unauthorized refusal by the court to discharge the jury from the further consideration of a case, where they have deliberated for less than a day, and during this period have not asked for additional instructions, nor expressed any desire to be relieved from the consideration of the case.

APPEAL by the defendant, The President, Managers and Company of the Delaware and Hudson Canal Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 23d day of December, 1895, upon the verdict of a jury, and. also from an order bearing date the 18th day of December, 1895, and entered in said clerk's office denying the defendant's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the 27th day of December, 1895, denying the defendant's motion to set aside the verdict in favor of the plaintiff on the ground of the unreasonable and unauthorized refusal to discharge the jury from the further consideration of the case when such discharge was requested by the counsel for the defendant, and also from an order bearing date the 21st day of December, 1895, and entered in said

clerk's office granting the plaintiff an additional allowance of five per cent on the recovery.

*Lewis E. Carr,* for the appellant.

*J. Newton Fiero,* for the respondent.

Adams, J. :

The plaintiff brings this action to recover damages for personal injuries which she claims to have sustained in consequence of the defendant's negligence.

It appears that upon the 24th day of August, 1893, the plaintiff, a young lady about twenty-two years of age, was traveling in company with her father, her uncle, her cousin and brother upon a regular passenger train which was eastward bound upon the defendant's road. When about twenty miles west of Albany the train, while moving at the rate of about forty-five miles an hour, suddenly left the track and ran a distance of nearly five hundred feet upon the ties before it could be stopped.

While proceeding in this manner the oil can of a metal lamp which was adjusted to the ceiling of the car and directly over the seat occupied by the plaintiff, became in some manner detached from the lamp and dropped upon the plaintiff, striking her upon her right hip and producing injuries so painful and serious as to disable her, in all probability, for the remainder of her life.

After the accident it was discovered that at the point where the derailment occurred the south rail was out of line and inclined towards the north a distance of about one-half its width, while the north rail retained its proper position. The ties were to some extent torn up and broken, as were the angle plates and the bolts which fastened the same, and many of the spikes were pulled out from the ties. On the west end of the south rail were fresh marks which were obviously caused by the flange of the wheels, and some of the broken portions of the bolts and plates could not be found. Evidence was given by the plaintiff's witnesses which tended to show that at or near the point of derailment several of the ties were in a decayed or dozy condition, so that the point of a parasol or umbrella could be inserted through their surface with little or no

difficulty. And one witness testified that at the place where the train left the track he discovered that the west end of the rail and the tie upon which it had rested had sunken some six or eight inches below the east end of the adjoining rail.

Upon the part of the defendant considerable evidence was furnished to the effect that the section of the road upon which the derailment occurred had been thoroughly and frequently inspected; that the roadbed was in excellent condition; that old ties had been replaced by new ones from time to time as occasion required, and that at the very point where the south rail was displaced a new and sound tie had been laid but a short time prior to the accident. The fact that any depression existed at the west end of this rail was likewise emphatically denied by several witnesses, who stated the opportunity for examination which had been afforded them.

This brief statement of the salient features of the case will demonstrate, we think, that an issue of fact was fairly presented, as respects the defendant's negligence, which renders any interference by this court with the conclusion reached by the jury unjustifiable, and we proceed, therefore, to the consideration of another question discussed with great care upon the briefs of counsel, and one concerning which opposing views have been re-enforced by many authorities, which appear, at first glance, to be in conflict with each other.

One A. J. Swift, a witness called on behalf of the plaintiff, testified that he was, and for twelve years had been, the chief engineer of the defendant; that he was notified of the accident and visited the scene of it the same day of its occurrence; that he made a careful examination of the situation, and he also testified very minutely to the facts which such examination disclosed. Upon the cross-examination of this witness he was asked the following question:

" Q. From the examination made by you at that time and at that point, did or did not the condition of those ties have any effect upon the cause of the derailment, or could, in your opinion, the condition of those ties have caused or contributed to the derailment? "

This was objected to by the plaintiff's counsel upon the ground that it was not a proper matter of opinion, and upon the further ground that it was a question for the jury to determine. The objection was sustained, to which ruling the defendant's counsel duly

excepted.  The question was thereupon repeated in this modified
form : " Q. What, in your opinion, judging from your examination
of the scene of the accident, what you found, was the cause of the
derailment ? "

A similar objection was again interposed, which was in like man-
ner sustained by the court, and the defendant's exception thereto
brings up for review the supposed error which counsel now insists
requires a reversal of the judgment appealed from.

The precise question, therefore, which is thus presented for our
consideration, is whether or not the opinion of this witness, upon the
subject concerning which he was interrogated, was competent evi-
dence ; or, in other words, was the subject-matter of the inquiry
one concerning which expert testimony was admissible ?

It is often quite difficult to distinguish correctly the line of demar-
cation between opinions which are admissible and those which are
not, and in consequence of the difficulty which surrounds the ques-
tion many definitions of what constitutes " expert evidence " have
been furnished by courts and text writers.   From the various
authorities upon the subject which have come under our notice we
have selected two which furnish definitions in harmony with our
own views, and which, we think, will prove serviceable in this par-
ticular emergency.

In an elaborate and exhaustive discussion of the subject the rule
applicable to expert testimony was thus stated by an eminent jurist,
whose enunciation of a legal proposition always commands attention :
" It is not sufficient to warrant the introduction of 'expert evidence
that the witness may know more of the subject of inquiry, and
may better comprehend and appreciate it than the jury ; but to war-
rant its introduction, the subject of the inquiry must be one relating
to some trade, profession, science or art in which persons instructed
therein, by study or experience, may be supposed to have more skill
and knowledge than jurors of average intelligence may be presumed
generally to have.   The jurors may have less skill and experience
than the witness and yet have enough to draw their own conclusions
and do justice between the parties.   Where the facts can be placed
before a jury, and they are of such a nature that jurors generally
are just as competent to form opinions in reference to them and
draw inferences from them as witnesses, then there is no occasion to

resort to expert or opinion evidence. To require the exclusion of such evidence, it is not needed that the jurors should be able to see the facts as they appear to eye-witnesses, or to be as capable to draw conclusions from them as some witnesses might be, but it is sufficient that the facts can be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them, can base intelligent judgments upon them and comprehend them sufficiently for the ordinary administration of justice." (*Ferguson* v. *Hubbell*, 97 N. Y. 513, 514, opinion by EARL, J.)

In a somewhat earlier case it was said by TALCOTT, J., that "The opinions of experts are only admissible when it appears from the nature of their avocations, or from their testimony concerning their experience, that the matter inquired about involves some degree of science or skill which they have made use of, so that, from experience, they are fitted to answer the question propounded with more accuracy than others who may not have been called upon to employ science or exercise skill on the subject." (*Clark* v. *Bruce*, 12 Hun, 274, 276.)

Let us attempt very briefly, therefore, to apply the rule as thus stated, to the case in hand. In doing this it may be assumed that the witness of whom the questions were asked probably knew more concerning the subject of the inquiry than did the jury. This, however, did not necessarily qualify him to give expert testimony, for his superior information was not the result of scientific knowledge, neither was it due to any peculiar skill which he possessed in regard to such matters, but simply to the fact that he, an intelligent man, doubtless had been afforded an opportunity to examine the condition of affairs immediately succeeding the accident. In this respect he had the advantage of the jury, and, by reason thereof, he may possibly have formed an opinion as to the cause of the derailment which was entirely satisfactory to himself. But can it be seriously contended that the opinion thus formed would furnish a proper basis upon which persons less fortunately situated than the witness could rest a conclusion ?

Again, the case was tried upon the theory that the cause of the accident was the derailment of the train. This much appears to be conceded by both parties, but whether the cause of such derailment was the negligence of the defendant in not properly caring for its track and roadbed, or an inevitable accident, or the criminal inter-

vention of some third party, was the vital issue in the case, and the one which the jury were asked to solve.

In order to obtain a correct solution of this issue, all the facts of the case were placed before the jury, and from these facts they were asked to draw such inferences as they deemed warrantable, and not such as commend themselves to other persons.

Now, while it is true that it is no objection to the expression of an opinion by an expert witness, that it relates to the precise question to be determined by the jury (*Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424, 429), yet, as was said in the case just cited : " Evidence of that character is only allowed when, from the nature of the case, the facts cannot be stated or described to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable."

This, certainly, was not the situation here, but, on the contrary, the jury were required to determine the issue presented to them under these conditions : A railroad accident had occurred in consequence of the derailment of a train, which derailment must have resulted from one of three causes. All the facts and circumstances attending the accident, and the condition of the roadbed, the ties, rails, plates and bolts, as they appeared to the different witnesses immediately thereafter, were described to the jury, and they were thus furnished every possible opportunity to determine to what extent, if at all, the defendant was responsible therefor. One of these witnesses is then asked to express his opinion as to the probable cause of the derailment. This, it seems to us, was, under the circumstances just detailed, a question which involved not so much the technical knowledge or skill of this particular witness, as the result of his observation ; and, had he been permitted to answer the same, he would simply have expressed an opinion concerning a matter which the jury were just as competent to decide as he, and which it was peculiarly their province, and not that of the witness, to decide.

Having thus expressed our view of this very interesting question, we do not deem it necessary or profitable to draw any distinction between this and the cases cited in support of the defendant's contention, although such an undertaking would not, we apprehend, be

attended with a serious difficulty. It is only necessary to add to what we have said in our discussion of the subject that, in our judgment, the rules by which the opinions of experts have been admitted in evidence are not sufficiently elastic to make such evidence as was sought to be obtained from the witness Swift competent; and that, consequently, its exclusion by the learned trial justice furnishes no ground for a reversal of the judgment.

In connection with the appeal from the judgment·and the order denying the defendant's motion for a new trial on the minutes, the record also brings up for our review two additional orders, one of which denied the defendant's motion to set aside the verdict upon the ground that the same was procured by the unreasonable and unauthorized refusal to discharge the jury from further consideration of the case, and the other granted the plaintiff an additional allowance, by way of costs, of $450.

It seems that the learned justice who presided at the trial submitted the case to the jury about half-past three o'clock in the afternoon of Friday. Desiring to return to his home, which was some distance from the city of Albany, where the trial took place, it was arranged with the consent of counsel in open court that the verdict should be received, and any motions relative thereto heard by another justice who resided in the city. This arrangement was carried into effect, and a verdict was rendered about noon of the following day.

It does not appear that during this interval any request was made by the jury for additional instructions, or that any desire was expressed by them to be relieved from the consideration of the case, and the learned justice to whom the case was finally intrusted, consequently, had every reason to suppose that their deliberations would terminate in an agreement, as they ultimately did.

In refusing to discharge the jury at the request of the defendant's counsel, we are unable, therefore, to discover anything more than the exercise of the discretionary power which resided in the court, and which was fully justified by the result. So far as the matter of an extra allowance is concerned, it is only necessary to say that, inasmuch as no claim was made upon the argument, and none is found in the brief of the appellant's counsel, that a proper case was not presented for such an allowance, no occasion seems to

arise for the consideration of the appeal from the order granting the same. We conclude, therefore, that the judgment and all the orders appealed from should be affirmed, with costs.

All concurred.

Judgment and order denying motion for a new trial affirmed, with costs; order refusing to set aside the verdict affirmed, with ten dollars costs ; order granting additional allowance by way of costs, affirmed.