LIZZIE CAVEN, Admx., *vs.* THE BODWELL GRANITE COMPANY.

Knox.    Opinion April 4, 1903.

*Evidence.    Expert Testimony.    Negligence.*

It is not sufficient to warrant the introduction of expert evidence that the witness may know more of the subject of inquiry, and may better comprehend and appreciate it than the jury. To warrant its introduction, the subject of the inquiry must be one relating to some trade, profession, science or art in which persons instructed therein by study or experience may be supposed to have more skill and knowledge than persons of average intelligence may be presumed generally to have. The jurors may have less skill and experience than the witnesses and yet have enough to draw their own conclusions and do justice between the parties.

A mechanical engineer skilled and experienced in regard to the construction of all parts of a projecting stage, designed especially for unloading coal and when not in use for that purpose drawn back upon the permanent stage of the wharf, and the strength both of wood and wire under different conditions, may be competent to answer questions as to the suitability and sufficiency of an iron guy; also qualified to estimate the strain which would be exerted upon iron guys by a given weight at the end of a projecting stage.

A carpenter and builder with special experience in the construction of coal stagings and platforms may be permitted to give the jury his opinion as to the proper method of constructing certain parts of the woodwork of a staging. But it is a question for the jury whether, upon all the testimony relating to such a structure, an iron guy is suitable and sufficient for the use to which it is applied.

*Held;* that a witness, who is a carpenter and builder, but not a mechanical engineer or bridge builder, and who has had no special experience in proving the tensile strength of iron wire and cables, is not such an expert as to give his opinion in regard to the strength of wire cables; nor how many pounds a piece of wire rigging three-quarters of an inch in diameter or an inch in diameter, either old or new, can sustain.

On motion and exceptions by defendant.    Exceptions sustained.

Action by the plaintiff as administratrix of James Caven under Stat. of 1891, c. 124, to recover damages sustained by her as said Caven's widow by reason of his death caused by the collapse of a wharf staging belonging to the defendant.    Verdict for plaintiff.

Besides the general motion for a new trial and exceptions to instructions, and refusal to give certain requested instructions, the defendant excepted to the admission of certain testimony.    Only the latter is considered by the court.

The facts are sufficiently stated in the opinion.

*M. A. Johnson,* for plaintiff.

*C. E. and A. S. Littlefield,* for defendant.

SITTING:  WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, SPEAR, JJ.

WHITEHOUSE, J.    This is an action against the defendant company to recover damages for negligently causing the death of James Caven, the foreman of its granite quarry.    In addition to the duties immediately connected with his position as foreman of the quarry, Caven also had charge of the loading and unloading of vessels at the wharf.    It was not in controversy that his death was caused by the fall of a staging which projected from a permanent structure on the wharf out over the hold of the vessel.    This projecting stage was designed especially for unloading coal and when not in use for that purpose it was drawn back upon the permanent stage on the wharf. When extended, the projecting stage was supported by guys running from its outer end to the top of vertical timbers that rested on the capsill of the wharf and supported the outer corners of the permanent stage.    Other guys attached to the opposite side of these upright timbers at the top were secured to an anchorage in the ledge by the side of the coal shed.    These guys were of wire and when the stage was to be used they were attached to the anchorage and tightened by means of a tackle, one end of which was secured to the lower end of the wire guy and the other hooked into an eye-bolt in the ledge.

The lower end of the wire guy was provided with an eye into which one end of the tackle was hooked.

After the accident it was discovered that the two vertical timbers, to the tops of which the guys were attached, had been broken off at a point nearly level with the stage, and that the northern guy had broken at the eye into which the tackle was hooked.

A section of the wire cable, alleged to be a part of the broken guy, was introduced in evidence and exhibited to the jury.

The plaintiff contended that the northern guy was defective at the point of breaking and unsuitable for the purpose for which it was used, and that the vertical timbers of the stage were also insufficient.

The defendant contended that the breaking of the guy was the sole cause of the accident, but denied that it was insufficient, and further contended that in any event there was no actionable negligence respecting it on the part of the defendant company.

The verdict was for the plaintiff and the case comes to this court on motion and exceptions.

Among other exceptions reserved to certain instructions given the jury, the case discloses the following exception to the admission of evidence.

Charles O. Grant, a witness called by the plaintiff, testified in regard to his occupation that part of the time he was cutting stone and part of the time he built buildings and handled derricks; and that he built the coal shed and staging in question, in accordance with a plan furnished by the superintendent. Thereupon, he was permitted by the court, against the defendant's objection, to testify as follows in regard to the broken guy in question:

"The condition of this wire was worn and it had been used, that is, I could recognize that it had been used. It was an old piece of wire rigging and I didn't consider it suitable for that purpose. (Objected to and moved to be struck out.)

The Court: You may ask him whether it was a suitable piece of wire for that purpose.

Mr. Johnson: What was the condition of it?

Answer: When I put it there seven years ago the wire was rusty and some of the strands, some of the wires broken, and I presume it

was just as rusty at the present time, being exposed to the weather all the time; and it was small wire rigging from a vessel and unsuitable for the place it was put into." (Objected to.)

The Court: I think he may state that about its being suitable.

Whether or not this wire cable, in the condition described, was a suitable and sufficient guy to sustain the projecting stage in question, weighted as it was at the time of the accident, was one of the vital issues in the case, upon the decision of which the liability of the defendant company depended. It was purely a question of fact to be determined by the jury upon a consideration of all the relevant circumstances and conditions. The staging in question when projected eighteen feet beyond the permanent platform, and supported by guys passing over the tops of vertical timbers, illustrated some of the principles of mechanical engineering involved in both the cantilever and the suspension bridge. A mechanical engineer or expert bridge builder might be qualified to estimate the strain which would be exerted upon the iron guys in question by a given weight at the end of the projecting stage; one having special experience in the application of tests to prove the tensile strength of iron wire and iron cables, and special observation respecting the influence of time and use upon them, might be qualified to give the jury valuable information respecting the strength of the wire cable in question. A carpenter and builder with special experience in the construction of coal stagings and platforms might be permitted to give the jury his opinion as to the proper method of constructing certain parts of the woodwork of the staging in question. But it would still be a question for the jury whether, upon all the testimony relating to that particular structure, the northern guy was suitable and sufficient for the use to which it was applied.

Charles O. Grant, the witness in question, was not a mechanical engineer or bridge builder. He had no special experience in proving the tensile strength of iron wire and cables. The projecting stage in question was the only structure of the kind he had ever built or seen. From his experience in erecting buildings and handling derricks, he may have been better qualified than some of the jury to form a judgment as to the sufficiency of the guy in question. But "it is not

sufficient to warrant the introduction of expert evidence that the witness may know more of the subject of inquiry, and may better comprehend and appreciate it than the jury. To warrant its introduction, the subject of the inquiry must be one relating to some trade, profession, science or art in which persons instructed therein by study or experience may be supposed to have more skill and knowledge than persons of average intelligence may be presumed generally to have. The jurors may have less skill and experience than the witnesses and yet have enough to draw their own conclusions and do justice between the parties." *Ferguson* v. *Hubbell*, 97 N. Y. 507, S. C. 49 Am. Rep. 544; *Pulsifer* v. *Berry*, 87 Maine, 405. But if it be assumed in this case that a mechanical engineer skilled and experienced in regard to the construction of all parts of the projecting stage, and the strength of both wood and wire under different conditions, would be competent as a general expert to answer the final question as to the suitability and sufficiency of the northern guy, it is manifest that Charles O. Grant was not such an expert, and could not safely be permitted to decide as a witness one of the principal questions which it was the province of the jury to determine. The presiding judge did not feel authorized to recognize him as an expert in regard to the strength of wire cables and accordingly declined to permit him to estimate "how many pounds a piece of wire rigging three-quarters of an inch in diameter or an inch in diameter, either old or new, could sustain."

It may be true, as suggested by counsel, that his expression of opinion gave no additional weight to his testimony descriptive of the size and condition of the cable, and that the jury would have reached the same conclusions if the opinion had not been received as evidence. But as already stated, it related to one of the leading and vital questions in the case, and we do not feel warranted in assuming that the opinion of the builder who erected the staging, although in accordance with a plan furnished by the superintendent, expressed and more positively reiterated as was this opinion, would fail to make any impression upon the minds of the jury under the circumstances of this case. It is therefore the opinion of the court that the entry must be,

*Exceptions sustained.*